**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JUDITH K. KERNS**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 3:06-cv-1113** |
| | ) | **District Judge Trauger** |
| **v.** | ) | |
| | ) | |
| **CATERPILLAR, INC.,** | ) | **Class Action** |
| | ) | |
| **Defendant/Third-Party Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **INTERNATIONAL UNION, UAW,** *et. al*, | ) | |
| | ) | |
| **Third-Party Defendants.** | ) | |

**MEMORANDUM**

Currently pending before the court is a motion to dismiss by third-party defendants the

International Union, United Automobile, Aerospace and Agricultural Implement Workers of

America ("UAW International") and its Local Union Nos. 145, 751, 786, 974, 1086, 1415, and

2096 (collectively "UAW Local Unions").   (Docket No. 91).  Caterpillar, Inc. ("Caterpillar" or

"the Company") responds in opposition (Docket No. 104) and the third-party defendants have

replied to Caterpillar's response. (Docket No. 105).  For the reasons explained herein, the third-

party defendants' motion will be granted in part and denied in part.

**I.      Introduction**

This is an action for retiree health insurance benefits brought by surviving spouses of

former employees of Caterpillar who retired on or after March 16, 1998 and before January 10,

2005.   The plaintiffs assert that they are entitled to vested benefits from Caterpillar.

1

Caterpillar's third-party complaint attempts to force the UAW International and Local Unions to share the burden of the liability it faces in this lawsuit and in *Gary T. Winnett, et al. v. Caterpillar, Inc*., Civ. No. 3:06-0235, which is also pending before this court. The third-party defendants now move to dismiss third-party complaints filed by Caterpillar against the International Union and the UAW Local Unions in the instant case and in *Winnett*. The third-party defendants contend (1) the court lacks personal jurisdiction over the Local Union third-party defendants in Illinois, Pennsylvania, and Colorado; and (2) Caterpillar's claims against the remaining defendants must be dismissed for failure to state a claim.

In response, Caterpillar argues that it has alleged sufficient facts to establish personal jurisdiction over all third-party defendants. Further, Caterpillar argues that its third-party complaints plead sufficient facts to state a claim as to all four counts.

## II.     Background

The detailed background of this case is set forth in the court's memorandum opinion entered on June 27, 2007 (Docket No. 77 at pp. 4-18), and is incorporated herein by reference.

Generally, for many years, the UAW International and the Local Unions have served as exclusive bargaining representatives of Caterpillar employees throughout the United States, and the UAW and Caterpillar have engaged in collective bargaining over the terms and conditions of employment for those employees. (Docket No. 150, Winnett Third-Party Compl. ¶¶ 21-23; Docket No. 82, Kerns Third-Party Compl. ¶¶ 22-24). This negotiation has included bargaining over medical benefits for retirees. (Winnett Third-Party Compl. ¶¶ 24-25; Kerns Third-Party Compl. ¶¶ 25-26). According to Caterpillar, the UAW, its active employee members, and

2

retirees and their dependents traditionally have acquiesced in such bargaining and accepted the bargained benefits. (Winnett and Kerns Third-Party Compls. ¶¶ 23-28).

Historically, the labor contracts between the UAW and Caterpillar have consisted of a Central Labor Agreement ("CLA"), an Insurance Plan Agreement ("IPA"), a Group Insurance Plan ("GIP"), various "Local Agreements," and a "Signature and Identification Agreement." (Winnett Third-Party Compl. ¶ 28; Kerns Third-Party Compl. ¶ 29).

In April 1992, following expiration of the UAW-Caterpillar 1988 labor contracts, the parties reached impasse in their negotiations, and Caterpillar unilaterally implemented its final contract offer. (Winnett Third-Party Compl. ¶¶ 32-33, 39; Kerns Third-Party Compl. ¶¶ 33-34, 40). In December 1992, Caterpillar unilaterally implemented additional contract terms that included "caps" on what it would spend for certain retiree medical benefit costs. (Winnett Third-Party Compl. ¶ 51; Kerns Third-Party Compl. ¶ 52).

In 1998, the UAW and Caterpillar reached agreement on new labor contracts, including a new CLA, IPA, and GIP. (Winnett Third-Party Compl. ¶ 54; Kerns Third-Party Compl. ¶ 55). The successor 1998 labor contracts changed the retiree medical benefits for future and current retirees and their dependents. (Winnett Third-Party Compl. ¶¶ 54-61; Kerns Third-Party Compl. ¶¶ 58-60). In particular, these contracts included a provision that set a maximum average annual cost that Caterpillar would pay for medical benefits for employees retiring on or after January 1, 1992. (Winnett Third-Party Compl. ¶ 59; Kerns Third-Party Compl. ¶ 60). In connection with the 1998 deal, the parties gave concessions in order to secure certain cost sharing provisions. (Winnett Third-Party Compl. ¶¶ 34, 39-40, 50-51, 57-59; Kerns Third-Party Compl. ¶¶ 58-60, 63). To memorialize the agreement, the parties entered into a "Signature and Identification

3

Agreement" that identified the various labor contracts and confirmed the parties' agreement. (Winnett Third-Party Compl. ¶¶ 55-56; Kerns Third-Party Compl. ¶¶ 56-57).

According to Caterpillar, the collective bargaining negotiations between Caterpillar and the UAW for successor labor contracts to replace the 1998 labor contracts involved trade-offs and concessions by all parties concerning interrelated wages, benefits, and other terms and conditions of employment for active employees, as well as for current and future retirees and their dependents and/or surviving spouses. (Winnett Third-Party Compl. ¶¶ 63-70; Kerns Third-Party Compl. ¶¶ 64-74 ). In 2004, Caterpillar and the UAW agreed upon successor labor contracts. (Winnett Third-Party Compl. ¶ 70; Kerns Third-Party Compl. ¶ 71). To memorialize the parties' agreement, the UAW and Caterpillar executed an "Acknowledgment of Tentative Agreement" as well as a "Signature and Identification Agreement." (Winnett Third-Party Compl. ¶¶ 71-72; Kerns Third-Party Compl. ¶¶ 72-73).

In 2004, Caterpillar began charging retirees for a portion of their retiree medical benefits, and, in 2005, Caterpillar announced that surviving spouses of Caterpillar retirees would have to begin paying monthly co-payments for their health insurance benefits that they previously had not been required to pay. Caterpillar's actions prompted the *Kerns* and *Winnett* lawsuits. In *Winnett*, a class of retirees (and one surviving spouse) who retired from Caterpillar between 1992 and March 1998 seek relief under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, for Caterpillar's breach of its alleged promise in prior labor contracts to pay them lifetime, no-cost health benefits. In *Kerns*, a class of surviving spouses of Caterpillar retirees who retired on or after March 16, 1998 and before January 10, 2005 seek relief under the LMRA and ERISA

4

to prevent Caterpillar from breaching an alleged promise made in the 1998 labor contracts to pay lifetime health benefits to surviving spouses at no cost.

Seeking to reduce its own exposure in the *Winnett* and *Kerns* matters, Caterpillar has filed the instant third-party complaints against the UAW. Caterpillar alleges that the UAW has "actively encouraged and supported" the *Winnett* litigation, (Winnett Third-Party Compl. ¶ 76; Kerns Third-Party Compl. ¶ 78), and has "actively sponsored, funded, encouraged and supported" the *Kerns* litigation, (Winnett Third-Party Compl. ¶ 77; Kerns Third-Party Compl. ¶ 77). The third-party complaints contain four separate claims that, Caterpillar asserts, arise under "Section 301 or [sic] the LMRA and/or the federal common law." (Winnett Third-Party Compl. ¶¶ 84, 91, 100, 106; Kerns Third-Party Compl. ¶¶ 85, 92, 101,107). Caterpillar asserts that, in entering into labor contracts with Caterpillar in 1998 and 2004, the UAW International and Local Unions represented to Caterpillar that it had the authority to bargain on behalf of the retiree and retiree spouse plaintiffs in *Kerns* and *Winnett* regarding the benefits at issue in their lawsuits, (Winnett Third-Party Compl. ¶¶ 80, 87, 94; Kerns Third-Party Compl. ¶¶ 81, 88, 95); thus, the UAW must indemnify Caterpillar for any liability and costs associated with those suits. (*See* Winnett Third-Party Compl. ¶¶ 83, 89-90, 98; Kerns Third-Party Compl. ¶¶ 84, 90-91, 99). Caterpillar also asserts that the UAW has breached the 2004 labor agreements and 1998 Labor Dispute Settlement Agreement by allegedly encouraging and supporting the *Kerns* and *Winnett* litigation. (Winnett Third-Party Compl. ¶¶ 97, 104; Kerns Third-Party Compl. ¶¶ 98, 105).

Case 3:06-cv-01113   Document 128   Filed 05/01/08   Page 5 of 30 PageID #: 3864

**III.     Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction**

**A.     Standard**

A court deciding a motion to dismiss for lack of personal jurisdiction may rule on the motion on the basis of affidavits alone, permit discovery in aid of the motion, or conduct an evidentiary hearing on the merits of the motion. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (quoting *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). In all cases, the party asserting personal jurisdiction bears the burden of establishing that such jurisdiction exists. *See Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003); *see also Bird v. Parsons*, 289 F.3d 865 871 (6th Cir. 2002); *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

No party has requested an opportunity for discovery or an evidentiary hearing on the third-party defendants' motion; therefore, the court will decide the motion on the papers presented.[1]  When a court rules on a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the party asserting jurisdiction need only make a *prima facie* showing of jurisdiction to defeat the motion. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002); *see also Bird*, 289 F.3d at 871; *Dean*, 134 F.3d at 1272 (quoting *Compuserve*, 89 F.3d at 1262). The court must consider the facts in the light most favorable to the nonmoving party and must not consider conflicting facts offered by the defendant.  *Neogen*

---

[1]Although Caterpillar attached evidence outside the pleadings to the third-party complaints (*see* Exh. A to *Winnett*, Docket No. 150 and *Kerns*, Docket No. 82), and the court considers that evidence herein, the court is not required to convert Caterpillar's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction into a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d)("If, on a motion under Rule *12(b)(6) or 12(c)*, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.")(emphasis added).

6

*Corp.*, 282 F.3d at 887.   This approach "prevent[s] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Compuserve*, 89 F.3d at 1262 (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)); *see also Bird*, 289 F.3d at 871; *Neogen*, 282 F.3d at 887; *Dean*, 134 F.3d at 1272 (quoting *Serras*, 875 F.2d at 1214).  "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff ... alleges collectively fail to state a prima facie case for jurisdiction." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997) (quoting *Compuserve*, 89 F.3d at 1262).  A plaintiff "can meet this burden by 'establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).

>    B.    **Minimum Contacts Analysis**

Caterpillar has named as defendants in its third-party complaints seven UAW out-of-state Local Unions.  The third-party complaints allege that Local No. 1086 represented employees in Memphis, and that the other six Locals represented employees in Illinois, Pennsylvania, and Colorado.  (Winnett Third-Party Compl. ¶¶ 13-19; Kerns Third-Party Compl. ¶¶ 14-20). The UAW apparently concedes that the court has personal jurisdiction over the International UAW and UAW Local No. 1086 in Memphis.  (Docket No. 104 at 6).  The UAW contends that the court lacks personal jurisdiction over the UAW Locals based in Illinois, Pennsylvania, and Colorado.  (*Id.* at 6-8).

To be subject to a court's jurisdiction, a nonresident defendant must have sufficient contact with the forum state to satisfy the requirements of due process.  *Id*.  "The bedrock

principle of personal jurisdiction due process analysis is that when the Defendant is not physically present in the forum, [it] must have 'certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."" *Youn v. Track, Inc*., 324 F.3d 409, 417 (6th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To ensure that a defendant not be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person," a plaintiff must show that the defendant has "'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The Tennessee long-arm statute, *Tenn. Code. Ann*. § 20-2-214(a)(6),[2] does not require a separate inquiry, as it "extends the personal jurisdiction of Tennessee courts to the limits of the Due Process Clause." *Mull v. Alliance Mortgage Banking Corp*., 219 F. Supp. 2d 895, 903 (W.D. Tenn. 2002) (citing *Payne v. Motorists' Mut. Ins. Co.*, 4 F.3d 452, 455 (6th Cir. 1993)).

---

[2]Tennessee's long-arm statute, as codified at *Tenn. Code Ann*. § 20-2-214, provides, in relevant part:  (a) Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from: (1) The transaction of any business within the state; (2) Any tortious act or omission within this state; (3) The ownership or possession of any interest in property located within this state; (4) Entering into any contract of insurance, indemnity, or guaranty covering any Person, property, or risk located within this state at the time of contracting; (5) Entering into a contract for services to be rendered or for materials to be furnished in this state; (6) Any basis not inconsistent with the constitution of this state or of the United States; (7) Any action of divorce, annulment or separate maintenance where the parties lived in the marital relationship within this state, notwithstanding one party's subsequent departure from this state, as to all obligations arising for alimony, custody, child support, or marital dissolution agreement, if the other party to the marital relationship continues to reside in this state.

Therefore, the court need only address whether exercising personal jurisdiction over the defendants is consistent with federal due process requirements.

Section 301(c) of the LMRA provides that district courts shall have jurisdiction over a labor organization (1) in the district where the organization maintains its principal office; or (2) in any district where authorized agents or officers are engaged in representing or acting for employee members. 29 U.S.C. § 185(c). "[T]he analysis required under either section 301(c) or the traditional rules of 'minimum contacts' is so similar as to render this issue a distinction without a difference." *Local 670 v. Int'l Union, United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 822 F.2d 613, 620-21 (6th Cir. 1987).

Caterpillar contends that the court's exercise of personal jurisdiction over the out-of-state Local Unions is appropriate under the "effects test" of *Calder v. Jones*, 465 U.S. 783, 785-87 (1984); *see also Koch v. Local 438, UAW*, 54 Fed. Appx. 807, 810-11 (6th Cir. 2002)(analyzing and applying the effects test). (Docket No. 104 at 9-10). In applying *Calder,* the Sixth Circuit has held that a plaintiff must show that a defendant intentionally directed its activities toward Tennessee. *See Koch*, 54 Fed. Appx. 807, 811. In addition, under *Calder*, a defendant must also establish that a plaintiff purposefully availed itself of the privilege of conducting activities in Tennessee. *See Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994). According to Caterpillar, "the UAW's conduct encouraging and supporting the *Winnett* litigation and sponsoring, funding, encouraging and supporting the *Kerns* litigation is an intentional action, expressly aimed at the forum state, causing harm which the UAW knows will be suffered in the forum state." (Kerns Third-Party Compl. ¶ 77).

9

Even considering the facts alleged in the light most favorable to Caterpillar, *see Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989), the court finds that Caterpillar has failed to establish a *prima facie* case of personal jurisdiction as to the six out-of-state Local Unions.   Caterpillar has not established "'with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction.'" *Neogen Corp.*, 282 F.3d at 887.

In its third-party complaints, Caterpillar alleges that each of these six out-of-state Local Unions represented Caterpillar employees and retirees in locations *outside of* Tennessee. Caterpillar does not allege that any of these six Local Unions intentionally directed their activities towards Tennessee or purposefully availed themselves of the privilege of conducting activities in Tennessee, either in connection with the *Winnett* or *Kerns* lawsuits or otherwise. (*See* Winnett Third-Party Compl. ¶¶ 13-17, 19; and Kerns Third-Party Compl. ¶¶ 14-18, 20). Instead, Caterpillar alleges that actions by the collective "UAW" justify the court's exercise of personal jurisdiction over the out-of-state Local Unions.

First, Caterpillar argues that, because the "UAW" has encouraged and supported the *Kerns* and *Winnett* litigation, the court may exercise personal jurisdiction over the out-of-state Local Unions.  (Docket No. 104 at 10).  However, Caterpillar's complaint does not allege that or show how any of these unions encouraged or supported the *Winnett* or *Kerns* lawsuits. Caterpillar supports its general allegation with a memorandum attached as Exhibit A to the third-party complaints, claiming that the memorandum establishes that the Local Unions supported the lawsuits.  (*Id.*)  However, the memorandum is addressed *to* Local Unions by a UAW International official.  (Ex. A to Third Party Compls.).  It advises the Local Unions about the

*Winnett* and *Kerns* lawsuits and provides them with information to share with union members who may contact them with questions about the lawsuits. The memorandum does not, in the court's opinion, support the proposition that any out-of-state Local Union intentionally directed any activities towards Tennessee.

Second, Caterpillar contends that the court has jurisdiction over the out-of-state Local Unions by virtue of their participation in national UAW bargaining and contract administration activities in relation to Caterpillar. (Docket No. 104 at 10-11). However, the six out-of-state Local Unions are situated as the California local union in *Local 670 v. Int'l Union, United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 822 F.2d 613 (6th Cir. 1987), a case discussed by both parties in their briefs. In that case, several local unions were parties to a master agreement with a common employer that had some employees in Tennessee. *Id.* at 615. Representatives of each local served on the central bargaining committee responsible for negotiating that agreement. *Id.* Representatives of the international union had visited Tennessee "on [the California local]'s behalf" with regard to the subject of the lawsuit. *Id.* at 621. The Sixth Circuit held that the local union was not subject to jurisdiction in Tennessee, specifically considering and rejecting the argument that an out-of-state local union had "purposefully availed" itself of conducting activities in Tennessee by virtue of its membership on the central bargaining committee and its signature on the master agreement. *Id.* The Court found that a ruling to the contrary "would obligate each local to defend lawsuits in every state in which the International had done business." *Id.*

As in *Local 670*, the instant local unions' mere affiliation with the UAW International does not vest this court with personal jurisdiction over them. *Id.; see also Reed v. Int'l Union,*

11

*United Auto., Aerospace & Agric. Implement Workers of Am.*, 945 F.2d 198 (7th Cir. 1991)

(finding that an Indiana district court lacked jurisdiction over local union that represented

employees in Oklahoma, despite local union's affiliation with international union subject to

jurisdiction, and visit by Oklahoma local union officials to Indiana). Local unions and their

parent international unions are generally independent entities from each other. *See generally*

*Shimman v. Frank*, 625 F.2d 80, 97 (6th Cir. 1980), *overruled on other grounds*, 744 F.2d 1226.

Caterpillar reads *Local 670* as supporting an exercise of jurisdiction in this case because,

according to Caterpillar, the UAW "so substantially participated in, condoned, ratified, or aided

a particular local, at the request or instigation of the local, as to impute the International's actions

for its benefits to that local." 822 F.2d at 621. But Caterpillar has not alleged facts supporting

the existence of an agency relationship between the locals and the UAW International. *See id.*

(holding that, although the International's actions in that case did not rise to the requisite level to

invoke agency status, "[w]e do not imply that an International Union cannot exercise sufficient

control and dominion over its member locals so as to support a finding that they effectively act

as an agent for each individual local in dealing with other locals."); *Compare EEOC v. Tri-State*

*Plumbing, Heating & Air Conditioning Contractors, Inc.*, 2007 WL 649088, at **3-4 (W.D.

Tenn. Feb. 27, 2007)(finding that the plaintiff's allegations of the existence of an agency

relationship between the international union and local union survived a 12(b)(6) motion).

Unions may engage in cooperative activities without becoming each other's agents. *See BE & K*

*Constr. Co. v. United Brotherhood of Carpenters and Joiners of Am., AFL-CIO*, 90 F.3d 1318,

1326 (8th Cir. 1996)("The sort of cooperation in the spirit of labor solidarity undertaken in the

campaign does not transform one union into the agent of another.").

12

Caterpillar has failed to meet its burden under Fed. R. Civ. P. 12(b)(2) of demonstrating that each out-of-state Local Union had sufficient minimum contacts with Tennessee so as to subject it to the personal jurisdiction of the court. Accordingly, the third-party defendants' motion to dismiss for lack of personal jurisdiction will be granted.

## IV. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

### A. Standard

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will accept as true the facts as the plaintiff has pleaded them. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002); *Performance Contracting, Inc. v. Seaboard Sur. Co.*, 163 F.3d 366, 369 (6th Cir. 1998). The Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Indeed it may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test." *Scheuer*, 416 U.S. at 236. Rather, challenges to the merits of a plaintiff's claim should be "dealt with through summary judgment under Rule 56." *Swierkiewicz*, 534 U.S. at 514.

In *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007), the Supreme Court readdressed the pleading requirements under the federal rules. The Court stressed that, although a complaint need not plead "detailed factual allegations," those

13

allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65.

"The factual allegations, assumed to be true, must do more than create speculation or suspicion

of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United*

*Latin Am. Citizens v. Bredesen*, No. 03-5306, 2007 U.S. App. LEXIS 20556, at *6 (6th Cir. Aug.

28, 2007) (citing *Twombly*, 127 S. Ct. at 1965). Further, the Court observed that Federal Rule of

Civil Procedure 8(a)(2) does require a "showing" that the plaintiff is entitled to relief and that

this substantive threshold is not achieved by conclusory assertions. *Twombly*, 127 S. Ct. at 1965

n.3.

Although Federal Rule of Civil Procedure 8 establishes a "liberal system of notice

pleading," *see E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001), "a

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Twombly*, 127 S. Ct. at 1964-65 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

Accordingly, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a

right to relief above the speculative level . . . on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)." *Id.* at 1965; *see also Swierkiewicz,* 534 U.S. at 508

n.1; *Neitzke v. Williams,* 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . .

dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer,* 416 U.S.

at 236 (a well-pleaded complaint may proceed, even if it appears "that a recovery is very remote

and unlikely").

As is required at the motion to dismiss stage, the court relies on the allegations in the

third-party complaints and, for purposes of resolving the pending motion to dismiss, accepts

those allegations as true. *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997).

The third-party complaints rely on several agreements to form the basis for Caterpillar's claims, although the agreements were not attached thereto. The court may consider those agreements, which are integral to Caterpillar's claims, without converting the motion to dismiss into a motion for summary judgment. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). With this standard in mind, the court turns to an analysis of Caterpillar's claims.

**B.      Analysis**

The third-party defendants allege that Caterpillar fails to state a claim as to the four counts alleged in the third-party complaints.

**1.      Count I**

As Caterpillar explains, "Count I contends that the UAW contractually agreed to limit Caterpillar's liability for retiree medical benefits for all retirees, and that promise can be enforced against the party that caused Caterpillar to enter into the contract, regardless whether it may be enforced against the plaintiffs." (Docket No. 104 at 13). Caterpillar specifically alleges that it relied on representations made by the UAW in several agreements that it had the authority to bargain on behalf of the *Kerns* and *Winnett* plaintiffs regarding their retiree health benefits; the UAW's actions and representations were within its actual or apparent authority; and, even if it is determined that the UAW had no such authority, "the provisions of the [1998 and 2004 labor contracts], including the limitations on Caterpillar's liability for retiree medical benefits, are enforceable against the UAW." (Winnett Third-Party Compl. ¶¶ 80-82; Kerns Third-Party Compl. ¶¶ 81-83). On the basis of these allegations, Caterpillar asserts that, in the event the *Kerns* or *Winnett* plaintiffs succeed in their claims against Caterpillar, "the UAW is liable for

15

amounts above the contractually agreed-upon financial caps set forth in the 1998 and 2004 labor contracts, as well as the attorneys' fees and costs incurred by Caterpillar in defending this action."  (Winnett Third-Party Compl. ¶¶ 82-84; Kerns Third-Party Compl. ¶¶ 83-85).  Caterpillar contends that Count I is supported by the language of the various labor contracts between the parties, as well as the UAW's entire course of conduct.

In response, the third-party defendants contend that Count I fails because the UAW never represented in the 1998 and 2004 labor contracts that it had authority to bargain regarding vested retiree benefits, and because the UAW never agreed to indemnify Caterpillar for any retiree claims.  (Docket No. 92 at 8).

First, the third-party defendants allege that Count I fails because the UAW never represented in any agreement that it had authority to reduce vested retiree rights.   Caterpillar asserts that, in agreeing to the 1998 and 2004 labor contracts and executing the 1998 "Signature and Identification Agreement," 2004 "Acknowledgment of Tentative Agreement" and 2004 "Signature and Identification Agreement," the UAW represented that it had the authority to enter into those agreements on behalf of themselves as well as retirees.

"If the language of a collective bargaining agreement lends itself to one reasonable interpretation only, it is not ambiguous and can be construed as a matter of law." *Illinois Conference of Teamsters & Employers Welfare Fund v. Mrowicki*, 44 F.3d 451, 459 (7th Cir. 1994).  Under Section 301 of the LMRA, "in discerning the intent of the parties [to a collective bargaining agreement], basic rules of contract interpretation apply."  *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 654 (6th Cir. 1996).  "'For example the court should first look to the explicit language of the collective bargaining agreement for clear manifestations of intent . . . . If

possible, each provision should be construed consistently with the entire document and the relative positions and purposes of the parties.'" *Id.* (quoting *Yard-Man*, 716 F.2d 1476, 1479).

Caterpillar has failed to identify any language in these agreements that supports its assertion that the UAW intended to bind anyone who had already retired. The unambiguous documents do not contain any explicit representations of such authority. The language of the agreements cited indicates that the UAW only executed the agreements on behalf of active Caterpillar employees, and not retirees. The "Signature and Identification Agreements" state that, with regard to the local agreements identified in those agreements, the signatures of the UAW International and Local Union representatives on the Agreements constituted "the signing of various Local Agreements for the bargaining units for which such representatives are authorized to act." (1998 Signature and Identification Agreement, Docket No. 93, Ex. 1 at p. 7; 2004 Signature and Identification Agreement, Docket No. 94, Ex. 4 at p.6). Unions do not generally possess authority to bargain on behalf of retired employees. *Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 172 (1971)(retirees are not "employees" included in a bargaining unit for purposes of a union's role as exclusive representative); *Rossetto v. Pabst Brewing Co., Inc.*, 128 F.3d 538, 539-40 (7th Cir. 1997)(quoting *Pittsburgh Plate Glass*)("Labor jurisprudence is clear that retirees cannot be part of this group or 'bargaining unit.'"). Unions do not represent retirees in a collective capacity, as they do active employees. *See United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 283 (6th Cir. 2007).

In addition, each of these agreements acknowledged that the labor contracts identified were subject to ratification. *See Michota v. Anheuser-Busch, Inc.*, 755 F.2d 330, 337 (3d Cir.

17

1985)(Becker, J., concurring)("[R]etired workers generally do not participate in the collective bargaining ratification process."); *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *23 (E.D. Mich. Mar. 31, 2006)("There is . . . no provision in the UAW Constitution that gives retirees--unlike active employees--a right to vote on the ratification of a collective bargaining agreement.").  Thus, contrary to the allegations of the third-party complaints, *see* Winnett Third-Party Compl. ¶¶ 56, 73; Kerns Third-Party Compl., ¶¶ 57, 74, the statements in the 1998 and 2004 "Signature and Identification Agreements" that the agreements were "binding on all parties signatory [thereto]" are not representations by the UAW that it had authority to bind Caterpillar retirees.  Similarly, contrary to Caterpillar's allegations, *see* Winnett Third-Party Compl. ¶ 71; Kerns Third-Party Compl. ¶ 72, the statement in the "Acknowledgment of Tentative Agreement" that the UAW was "fully authorized and empowered to take all such actions" does not represent that the UAW had any authority to bargain over vested retiree benefits.

Given any explicit representation of authority, and considering the applicable law, the court cannot interpret the 1998 and 2004 labor agreements as representing that the UAW had the authority to modify or relinquish any claims that retirees had to vested benefits.  While retiree benefits are a permissive subject of bargaining between unions and employers, *Pittsburgh Plate Glass Co.*, 404 U.S. at 181-82, and while unions can bargain to change non-vested retirement benefits, including the non-vested benefits of current retirees, it is well-established that the vested benefits of retirees cannot be modified by subsequent agreements between unions and employers, absent the consent of each retiree.  *Cooper Tire*, 474 F.2d at 484-83 ("The Union may still arbitrate on behalf of the Retirees and Survivors, but only after they have consented to

18

such representation."); *Rossetto*, 128 F.3d at 540 (explaining that, "[a]lthough a union has no duty to represent retirees, and retirees need not submit to union representation, retirees are free to make a union their agent if they so choose."). A "union may not . . . 'bargain away retiree benefits which have already vested in particular individuals. Such rights, once vested upon an employee's retirement, are interminable and the employer's failure to provide them [is] actionable under § 301 by the retiree.'" *Policy v. Powell Pressed Steel Co.*, 770 F.2d 609, 613 (6th Cir. 1985)(quoting *Yard-Man*, 716 F.2d at 1482 n.8); *see also Pittsburgh Plate Glass*, 404 U.S. at 182 n.20. Accordingly, the court finds that Caterpillar cannot show under any set of facts consistent with the third-party complaints that, by assenting to these agreements, the UAW represented to Caterpillar that it had actual authority to reduce vested retiree benefits.

Next, Caterpillar alleges that the UAW's actions or representations were made "within the scope of its . . . apparent authority." (Winnett Third-Party Compl. ¶ 81; Kerns Third-Party Compl. ¶ 82). Caterpillar argues that the UAW can be liable as a "professed agent" because it implicitly but falsely warranted that it had authority to sign the 1998 and 2004 labor agreements on behalf of all Caterpillar retirees and dependents. In response, the third-party defendants allege that Caterpillar cannot prove under any set of facts consistent with its allegations that the UAW had any apparent authority to reduce vested retiree rights.

Under Section 301, whether an agent has "apparent authority" to bind a principal depends not on the acts of the agent (here, the UAW) but requires acts of the principal (here, the retirees) sufficient to induce reasonable reliance in a third party. *See, e.g., Central States Southeast & Southwest Areas Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098, 1113 (6th Cir. 1986)("Apparent authority can . . . be created only by the principal's manifestations to a third party. The agent's

19

representations of authority to a third person, standing alone, are insufficient to create apparent authority in the agent to act for the principal.").

In *Cooper Tire*, the Sixth Circuit explained that, before a union could act on the behalf of retirees and surviving spouses whose benefits had vested, it needed the consent of each retiree and surviving spouse. 474 F.3d at 282-83. Here, Caterpillar alleges that retirees acted in a manner so as to cause Caterpillar reasonably to believe that they had consented for the UAW to bargain for reduction in their vested benefits by "ratifying" such an exercise of authority by accepting benefits under the 1998 and 2004 labor contracts. (Winnett Third-Party Compl. ¶¶ 62, 75; Kerns Third-Party Compl. ¶¶ 63, 76). According to the third-party defendants, however, the retirees' "passive" acceptance of some benefits under a collective bargaining agreement is not equivalent to their ratification of the complete contract, including provisions that reduce existing benefits. There is some authority to support this position. In *Schalk v. Teledyne, Inc.*, 751 F. Supp. 1261 (W.D. Mich. 1990), aff'd, 948 F.2d 1290 (6th Cir. 1991), the court found that the retirees' tolerance of collectively-bargained-for increases in prescription co-payments did not bar suit over other changes. *Id*. at 1266-67. On the other hand, the cases cited by Caterpillar in support of its position are not only out-of-circuit, non-binding authority, but they are also factually distinguishable. (*See* Docket No. 104 at 3-6; Docket No. 105 at 10-11). Thus, even if historically retirees have acquiesced in UAW bargaining by accepting the bargained benefits, as Caterpillar alleges, the retirees' acceptance of increases or of non-material changes to their benefits does not lead to the inevitable conclusion that the originally promised benefits were not vested, or that the UAW had been individually authorized by retirees to bargain for reductions to their benefits.

The strongest theory offered by Caterpillar is that the UAW implicitly represented, through its historical course of conduct, that it had apparent authority to bargain reductions in the benefits as well as enhancements for the *Kerns* and *Winnett* plaintiffs. In collective bargaining negotiations, there need not be an express representation of authority, as authority can be inferred from conduct, custom, or practice developed over time between the union and the employer. *Central States Southeast and Southwest Areas Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098, 1113 (6th Cir. 1986). Here, Caterpillar alleges that the UAW and retirees conducted themselves over a period of time in a manner that led Caterpillar to believe that such authority existed. (Winnett Third-Party Compl. ¶¶ 21-30, 32-34, 54-75; Kerns Third-Party Compl. ¶¶ 22-31, 55-63, 65-66, 70-72).

Caterpillar argues in its brief that the UAW repeatedly bargained over retiree benefits and entered into successive labor contracts that enhanced *and* reduced those benefits. However, the third-party complaint only alleges that, historically, retirees allowed the UAW to bargain on their behalf for improvements to their benefits--not reductions. Caterpillar's complaint does not allege that, at any point prior to the 1998 and 2004 contracts, the UAW ever agreed to any material reductions in health benefits for persons already retired. (*Compar*e Docket No. 104 at 17 *with* Winnett Third-Party Compl. ¶¶ 21-30 and Kerns Third-Party Compl. ¶¶ 22-31). The allegations, for the most part, do not distinguish between union conduct in negotiating about the subject of future retiree benefits generally – which the union is plainly authorized to do as the agent of active employees--and union conduct in negotiating over material reductions in benefits for persons already retired--which the union cannot do without the consent of each affected retiree. *See Pittsburgh Plate Glass*, 404 U.S. at 181-82; *Yard-Man*, 716 F.2d 1476, 1482.

21

Further, the court does not accept Caterpillar's argument that the parties "bargained about changes" to retiree health benefits during the "1991-1998 collective bargaining negotiations." (Docket No. 104 at 2). There were no "negotiations," as Caterpillar unilaterally implemented the benefit caps on Caterpillar retirees while the parties were at an impasse. Even accepting that an "implied in fact" contract between the parties was created, *see McNealy v. Caterpillar, Inc.*, 139 F.3d 1113 (7th Cir. 1998), the UAW's conduct during the parties' impasse should not have given Caterpillar reason to believe that retirees' rights under previous contracts were not vested or that the UAW had individual retirees' authorization to bargain over reductions in their benefits.

Although in 2004 there were changes to retiree medical benefits, Caterpillar has not alleged a historical course of bargaining over reductions prior to that year that would give Caterpillar reason to believe in 2004 that the UAW treated the benefits as non-vested, or that the UAW had the authority to bargain over reductions in benefits for people who had already retired. Caterpillar has alleged no explicit representations by the UAW in the 2004 negotiations, and nothing in the 2004 agreements assured Caterpillar that those who had already achieved a right to benefits as surviving spouses would not assert their claims based on the 1998 agreements. The absence of such allegations belies Caterpillar's assertion that there is a historical course of conduct on which Caterpillar could reasonably rely for the belief that the UAW had authority in 1998 or 2004 to bargain reductions on behalf of the already-retired employees who are members of the *Kerns* and *Winnett* plaintiff classes. Therefore, the court finds that Caterpillar has not alleged that any retirees acted in a manner so as to cause Caterpillar reasonably to believe that they had consented for the UAW to bargain for reductions in their vested benefits. Caterpillar

has failed to allege that, through its course of conduct, the UAW implicitly represented in 1998 or 2004 that it considered the retirees' benefits non-vested or that it had authority to bargain over reductions to benefits for people who were already retired.

Finally, Caterpillar asserts in Count I that, even if the UAW had no authority to modify vested retiree benefits, the caps on Caterpillar's financial responsibility are "enforceable against the UAW," and the UAW is liable to Caterpillar for any damages and legal costs it incurs in *Winnett* and *Kerns*. (Winnett Third-Party Compl. ¶¶ 82-83; Kerns Third-Party Compl. ¶¶ 83-84). In other words, Caterpillar alleges that the UAW contractually assumed financial responsibility for such costs.

The contractual provisions cited by Caterpillar in the third-party complaint in support of its argument are the provisions in the 1998 and 2004 GIPs which set a "cap" on Caterpillar's contribution to the cost of retiree health care. (*See* 1998 IPA and GIP, Section 5.15; 2004 IPA and GIP, Section 5.30(b)). These provisions, on their face, do not indicate that the UAW agreed to indemnify Caterpillar for any health care costs that Caterpillar might be adjudged to owe retirees in excess of those caps, nor do they suggest that the UAW would pay Caterpillar's litigation costs in defending retiree claims. *See Local 67, Operative Plasterers & Cement Masons' Int'l Ass'n v. GEM Mgmt. Co., Inc*., 2006 WL 314343, at **5-6 (E.D. Mich. Jan. 9, 2006)(where a collective bargaining agreement contained a general indemnification clause, district court found it would be an unreasonable "stretch" to interpret that clause as making the union liable to an employer for the cost of its employees' wage and fringe benefits).

The context of these provisions also is important. The GIPs, like most benefit plan documents, detail the benefit coverage Caterpillar provides to its retirees. They do not describe

23

any duties owed to Caterpillar by the UAW. And while the separate IPAs address the agreements between the UAW and Caterpillar with regard to the benefits described in the GIPs, nothing in the 1998 IPA or 2004 IPA indicates that the UAW assumed any financial responsibility for the benefits of Caterpillar's employees or agreed to indemnify Caterpillar against retiree claims. (*See* 1998 IPA and GIP; 2004 IPA and GIP). For the reasons discussed above, the court finds that Count I of the third-party complaints should be dismissed for failure to state a claim.

### 2. Count II

The same allegations support Counts I and II of the third-party complaint, but Count II adds that the UAW is liable to Caterpillar for any relief awarded the *Kerns* and *Winnett* plaintiffs because the UAW was a "willful" party to the 2004 contracts that plaintiffs allege to have violated their rights. (Winnett Third-Party Compl. ¶ 90; Kerns Third-Party Compl. ¶ 91).

The third-party defendants contend that Count II fails as a matter of law for the same reasons Count I fails and, additionally, because the UAW owes no duty of indemnification to Caterpillar by virtue of "willfully" executing the 2004 labor contracts. They point out that neither the *Kerns* nor the *Winnett* plaintiffs even allege that the 2004 labor contracts violated their vested rights; rather, the plaintiffs allege that Caterpillar's unilateral modification of their benefits in 2004 and 2006 violated their vested rights. Thus, they conclude, any willingness by the UAW to enter into the 2004 labor contracts cannot implicate the UAW in Caterpillar's alleged breach of the *Kerns* and *Winnett* plaintiffs' vested rights.

After reviewing the *Kerns* and *Winnett* complaints, the court agrees with the third-party defendants. The *Winnett* plaintiffs in fact allege that Caterpillar's violation of their vested

24

benefit rights began on October 1, 2004, *see* Docket No. 61, Winnett First Amended Compl. ¶¶ 29-32, *before* the 2004 labor contracts were ever executed, *see* Docket No. 94, Ex. 4, 2004 "Signature and Identification Agreement" (showing execution date of December 15, 2004). Accordingly, the court finds that Caterpillar cannot state as a matter of law a claim against the UAW based on its "willful" agreement to the 2004 labor contracts, and Count II of the third-party complaints will be dismissed.

### 3.    Count III

Count III is a breach of contract claim based on the 2004 labor contracts.[3]  Caterpillar contends that the 2004 labor agreements should be declared voidable at Caterpillar's election. (Winnett Third-Party Compl. ¶ 99; Kerns Third-Party Compl. ¶ 100).  The third-party defendants, in turn, allege that Count III fails as a matter of law because Caterpillar could not reasonably rely on any alleged representations regarding the UAW's authority, and the agreements contain no UAW promise to refrain from supporting retiree lawsuits.

In general, to withstand a Rule 12(b)(6) motion to dismiss, a party asserting a breach of contract claim must plead the existence of a contract, a breach of that contract, and resulting damages.  *See, e.g., Goldthread v. Davison,* 2007 WL 2471803, at *5 (M.D. Tenn. Aug. 29, 2007)(citing *Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. P'ship*, 79 F.3d 496, 514 (6th Cir. 1996).

---

[3]Although the third-party defendants raise the possibility that Caterpillar intends Count III to state a claim for fraudulent inducement (*see* Docket No. 92 at 21-22), Caterpillar advises that it characterizes Count III as a breach of contract claim, (*see* Docket No. 104 at 19 & n.7), and the court analyzes it as such.

25

Caterpillar's first theory of breach alleges that, if the court determines the UAW lacked actual or apparent authority with respect to the plaintiffs or any certified classes, the UAW misrepresented its authority, thereby breaching its representations in the 2004 "Acknowledgment of Tentative Agreement" and the 2004 "Signature and Identification Agreement." (Winnett Third-Party Compl. ¶ 96; Kerns Third-Party Compl. ¶ 97). The third-party defendants counter that, as a matter of logic and basic principles of contract law, a party cannot breach an agreement through the very act of entering into that same agreement. The court agrees.

Caterpillar's second theory of breach alleges that the UAW breached the 2004 labor agreements through its alleged "sponsorship, funding, active encouragement and/or support" of the *Winnett* and *Kerns* lawsuits. (Winnett Third-Party Compl. ¶ 97; Kerns Third-Party Compl. ¶ 98). The third-party defendants counter that this allegation cannot survive an examination of the 2004 labor agreements.

The UAW never explicitly promised in these agreements not to encourage or support any claims by Caterpillar retirees for vested benefits. (*See* 2004 "Signature and Identification Agreement"; 2004 "Acknowledgement of Tentative Agreement"; 2004 Central Labor Agreement; 2004 IPA and GIP). Notably, in the 2004 IPA, the UAW did agree that:

> neither the Union nor any of its officers, agents, or representatives, nor any of the Employees or their agents or representatives, shall engage or continue to engage in or in any manner encourage any strike, work stoppage, slowdown, or other interruption or impeding of work, or engage or continue to engage in any other use of economic force, for the purpose of securing any modification, change, or termination of this Agreement or the GIP, or for the purpose of securing the establishment of any new, different or additional plan for insurance or other benefits for death, sickness, accident, hospitalization or surgical or other medical services, or other welfare plans for the benefit of Employees or retired Employees, or the Dependents of either.

26

(2004 IPA, Section 5 at p. 2). On its face, by this provision, the UAW promised to end all economic activities--strikes, slowdowns, or other interruptions of work--for the purpose of securing additional benefits. The third-party defendants argue that the omission of litigation from the list of prohibited activities indicates that the parties could have agreed to include support for litigation in the list if they had wanted, and they did not.

Caterpillar argues that the UAW agreed to the 2004 labor contracts, and despite agreeing to be bound by these agreements, the UAW is engaging in conduct that seeks to subvert those very agreements it unreservedly entered into. Such conduct, claims Caterpillar, states a claim for breach of contract, citing 23 *Willison on Contracts* § 63:1 ("A breach of contract . . . may be inferred from the 'refusal of a party to recognize the existence of a contract, or the doing of something inconsistent with its existence' . . . .")(citation omitted).

Yet, the third-party defendants maintain that their good faith disagreement over the meaning of the labor contracts does not rise to the level of breach, citing *Safeco Ins. Co. of Am. v. City of White House*, 191 F.3d 675, 683 (6th Cir. 1999)("A good faith disagreement over the meaning of an ambiguous contractual provision does not constitute a breach of contract."), and 17A Am.Jur.2d Contracts § 699 (2008).

The court finds that Caterpillar has adequately alleged that the UAW, by its conduct in "actively sponsor[ing], fund[ing], encourag[ing] and support[ing]" the *Kerns* lawsuit, (Kerns Third-Party Compl. ¶ 77), and "actively encourag[ing] and support[ing]" the *Winnett* lawsuit (Winnett Third-Party Compl. ¶ 76), has breached its promise to be bound by the 2004 labor contracts. Viewing these allegations in the light most favorable to Caterpillar, these allegations are sufficient to withstand a Rule 12(b)(6) attack.

### 4. Count IV

Count IV of the third-party complaints alleges that, by "actively sponsor[ing], fund[ing], encourag[ing] and support[ing]" the *Kerns* lawsuit, and "actively encourag[ing] and support[ing]" the *Winnett* lawsuit, the UAW breached the Labor Dispute Settlement Agreement ("LDSA") entered into by the UAW and Caterpillar at the conclusion of the 1998 labor dispute. (Winnett Third-Party Compl. ¶¶ 77, 101-06; Kerns Third-Party Compl. ¶¶ 76, 102-07). To support these allegations, Caterpillar attached to its third-party complaint a memorandum to the Local Unions by a UAW International official. (*See* Ex. A to Third-Party Compls.). The third-party defendants contend that Count IV fails as a matter of law because neither support of the *Winnett* lawsuit nor even sponsorship of the *Kerns* lawsuit would breach the unambiguous terms of the LDSA because both the *Kerns* and *Winnett* plaintiffs' claims arose after the 1998 labor agreement was ratified.

In Section 4 of the LDSA, the UAW agreed that "it will cease funding or otherwise supporting, directly or indirectly, any litigation filed by itself, its members or third parties against [Caterpillar], its officers, agents or employees arising out of, or related to or connected with the [1991-1998 labor dispute]." (Ex. 8 to Docket No. 94, LDSA, Section 4 at p.2.) The LDSA specifically defines what the parties meant by the "arising out of" language. The preamble to the LDSA provides: "No claim or cause of action arising after ratification of the new Central Labor Agreement should be considered arising out of, related to or connected with the [1991-1998 labor dispute]." (*Id*. at p.1).

The third-party defendants contend the *Winnett* plaintiffs' claims arose in 2004 (when Caterpillar began charging the class for a portion of their retiree medical insurance benefits), and the *Kerns* plaintiffs' claims arose in 2005 (when Caterpillar announced that it would no longer provide no-cost medical coverage to them). Thus, according to the third-party defendants, the LDSA unambiguously exempts the *Kerns* and *Winnett* lawsuits from its no-litigation provision; therefore, the UAW could not have breached the LDSA by any alleged support of the *Kerns* and *Winnett* plaintiffs. Caterpillar's position is that, because the plaintiffs' claims arose as early as 1992, the UAW's sponsorship of the *Kerns* litigation violates the LDSA.[4]

In their reply brief, the third-party defendants assert that, "[b]y its silence about the *Kerns* claims, Caterpillar apparently concedes that the LDSA does not prohibit the UAW's support of

_____

[4]In its previously-filed motion to dismiss the *Winnett* plaintiffs' claims, Caterpillar raised a statute of limitations defense and argued that the *Winnett* plaintiffs' claims accrued in 1992. (*Winnett*, Docket No. 74). Rejecting Caterpillar's argument and denying its motion to dismiss, the court concluded: "Taking all of the plaintiffs' allegations as true, and also considering the evidence submitted by the parties in connection with the plaintiffs' pending motion for class certification, the court finds that the defendant has not shown that the plaintiffs' Section 301 LMRA or ERISA claims are time-barred." (*Winnett*, Docket No. 120 at 40).

With regard to the *Winnett* case, the third-party defendants argue that Count IV of Caterpillar's third-party complaint fails because Caterpillar's position that the plaintiffs' claims accrued in 1992 is untenable since "the Court has ruled otherwise[.]" (*Winnett*, Docket No. 196 at 18). However, what the court previously determined was that, viewing the evidence before the court at that time in the light most favorable to the plaintiffs, Caterpillar was not entitled to dismissal of the *Winnett* plaintiffs' claims based on a statute of limitations defense. The court's previous ruling regarding the timing of the accrual of the *Winnett* plaintiffs' claims is not the law of the case in the *Winnett* action. *See McKenzie v. BellSouth Telecomm., Inc.*, 219 F.3d 508, 513 (6th Cir. 2000)(stating that court's prior "holding on a motion to dismiss does not establish the law of the case for purposes of summary judgment, when the complaint has been supplemented by discovery."); *see also Nuchols v. Berrong*, 2008 WL 639719, at *3 (6th Cir. 2008)(quoting *McKenzie*). If the facts so warrant, the court's previous ruling as to Caterpillar's statute of limitations defense may be revisited.

Caterpillar has not raised and the court has not addressed a similar argument with regard to the accrual of the *Kerns* plaintiffs' claims.

the Kerns plaintiffs, whose claims are based on the 1998 labor contracts and arose in 2005."
(Docket No. 105 at 18).  However, the court does not agree with this interpretation of
Caterpillar's brief.  Although Caterpillar focused much of its argument on the *Winnett* plaintiffs,
(*see* footnote 4 herein), Caterpillar does not waver in its allegation that both the *Kerns* and
*Winnett* plaintiffs were on notice of the accrual of their claims prior to the ratification of the
1998 labor contract.  For purposes of ruling on the instant motion, the court must consider the
facts and allegations in the light most favorable to Caterpillar.   In so doing, the court finds that
Caterpillar's third-party complaint sufficiently pleads a claim that the UAW has not only
supported but has openly sponsored litigation arising out of and/or otherwise related to or
connected with the 1991-1998 labor dispute.  Therefore, the UAW's motion to dismiss Count IV
will be denied.

## V.      Conclusion

For the reasons stated above, the UAW's motion to dismiss for lack of personal
jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure will be granted.
All claims against the six out-of-state Local Unions in Illinois, Pennsylvania, and Colorado will
be dismissed.   The third-party defendants' motion to dismiss for failure to state a claim pursuant
to Rule 12(b)(6) of the Federal Rules of Civil Procedure will be granted in part and denied in
part.  The motion will be granted as to Counts I and II.  Accordingly, those claims will be
dismissed.  The motion will be denied as to Counts III and IV.

Entered this 1st day of May, 2008.

ALETA A. TRAUGER
United States District Judge

Case 3:06-cv-01113   Document 128   Filed 05/01/08   Page 30 of 30 PageID #: 3889