UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


| | | |
|---|---|---|
| JUDITH K. KERNS, et al.,<br>    Plaintiffs, | )<br>)<br>) | |
| v. | )<br>) | Case No. 3: 06-CV-1113<br>Judge Trauger |
| CATERPILLAR INC.,<br>    Defendant/Third-Party Plaintiff, | )<br>)<br>) | |
| INTERNATIONAL UNION, UAW, et al<br>    Third-Party Defendants | )<br>) | |

## **MEMORANDUM**

This matter is before the court on Caterpillar's Motion for Summary Judgment on Damages Issues. (Docket Nos. 387-38). This motion has three sections. The first section seeks judgment for any claims raised by surviving spouses who are themselves Caterpillar employees. This section is moot, as plaintiffs' class counsel have conceded these individuals are not Kerns class members and have withdrawn claims for damages or other relief sought on their behalf. The court construes the second section as a motion to strike plaintiffs' claim for damages for replacement insurance and out-of-pocket medical expenses. This portion of the motion will be denied. The third section is a motion for summary judgment on the claims raised by twelve individuals that Caterpillar argues have not produced sufficient evidence to withstand summary judgment. This portion of the motion will be granted as to four plaintiffs. As to the eight remaining plaintiffs, the court will hold defendant's motion in abeyance and invite plaintiffs to file a cross motion for summary judgment for those individuals.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

All that remains of this litigation is to determine plaintiffs' damages. Because the court

has recounted the factual and procedural history of this case numerous times, familiarity with the

facts will be assumed. This case and *Winnett v. Caterpillar* (Case No. 3:06-0235) are related but

not consolidated cases. By prior order dated March 26, 2010, this court granted the UAW's

motions to dismiss Caterpillar's Third-Party Complaint against it in both *Kerns* and *Winnett*.

(Docket No. 263.) Subsequently, through a series of decisions from this court and the Sixth

Circuit, the court dismissed the *Winnett* plaintiffs' claims and closed that case. (Docket No. 326-

27.)

The *Kerns* plaintiffs are surviving spouses of former employees of Caterpillar who retired

on or after March 16, 1998, and before January 10, 2005. The court has already entered judgment

as a matter of law for the *Kerns* plaintiffs, finding Caterpillar liable for violations of Section 301

of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 502(a)(1)(B)

of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) for

improperly charging premiums to the class of individuals whose spouses died after the

ratification of the 2004 Labor Agreement.[1] (Docket No. 262-63.) The court found that the 1992

unilateral implementation had explicitly "provided surviving spouses with vested no cost

medical benefits." (Docket No. 262.) The court found that other costs Caterpillar had imposed on

these plaintiffs, such as new deductibles, co-insurance, and increased out-of-pocket costs were

permissible under *Reese v. CNH America LLC*, 574 F.3d 315 (6th Cir. 2009).

---

[1] As the court has noted in prior opinions, while the Kerns class consists only of "surviving spouses," the size of this class may grow in the future, as the living Caterpillar retirees who retired under the 1998 Plan pass on. (Kerns, 499 F. Supp. 2d 1005, 1023 (M.D. Tenn. 2007), Docket No. 262 at 39 n. 20.

## ANALYSIS

The plaintiffs' claims are brought under § 301 of the LMRA and § 502(a)(1)(B) of ERISA. Section 301 of the LMRA states: "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter. . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). Section 502(a)(1)(B) of ERISA states that a "civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

### Summary judgment standard

Federal Rule of Civil Procedure 56(c) requires the court to grant a motion for summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan*, 578 F.3d at 374.

"[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## I. Motion for Summary Judgment as to Surviving Spouses Who Are Themselves Caterpillar Employees

Caterpillar's current motion for summary judgment on damages first seeks judgment on the claims of individuals who fall within the class definition in this action, but who the Company maintains are not entitled to damages because, although they are surviving spouses of Caterpillar retirees, they are also themselves Caterpillar employees entitled to their own "employee coverage" under the Company's health insurance plan. (Docket No. 387-1.) In plaintiff's response, class counsel assert that they had asked Caterpillar for information about this class of employees, but only obtained the requested details through reading Caterpillar's motion. Having now reviewed the information supplied by the motion, class counsel concede that these individuals are not entitled to relief on the basis of being a surviving spouse of a Caterpillar retiree. Accordingly, class counsel withdraw the claim that these individuals are *Kerns* class members and all claims for damages or other relief sought on their behalf. (Id.)[2] Any issue related to these individuals is moot.

---

[2] Plaintiffs' class counsel also represent that they are not currently asserting damages claims for Karen Dechman, Minerva Evans (deceased) and Lori Kroenlein based on Caterpillar's recent representation that these individuals are not class members and that their deceased husbands were not retirees. Class counsel indicate an intent to preserve the right to appeal class description rulings, but they are not currently asserting damages claims on behalf of these

**II.     Motion to Strike Damages for Replacement Insurance and Out-of-Pocket Medical Expenses**

### A.  Damages Available Under ERISA

Second, although Caterpillar concedes that individuals who paid premiums to maintain their Caterpillar health insurance are entitled to be reimbursed for costs of those premiums, Caterpillar now seeks summary judgment on the claims of twelve class members who cancelled their Caterpillar insurance because of the imposition of premiums and now seek damages for the cost of obtaining substitute coverage and reimbursement for out-of-pocket healthcare costs that would have been covered if Caterpillar had honored its agreement. Caterpillar characterizes these damages as extra-contractual consequential damages and asks this court to find that these damages cannot be recovered under the LMRA or ERISA. *See Simpson v. Ernst & Young*, 879 F.Supp. 802, 825 (S.D. Ohio 1994) ("In the context of ERISA, compensatory and punitive damages are often referred to as extra-contractual damages, not being available under the terms of a benefit plan.").

Caterpillar quotes *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985), in which the Supreme Court stated that

> the statutory provision explicitly authorizing a beneficiary to bring an action to enforce his rights under the plan- §502(a)(1)(B) . . . says nothing about the recovery of extra-contractual damages, or about the possible consequences of delay in the plan administrators' processing of a disputed claim. Thus, there really is nothing at all in the statutory text to support the conclusion that such a delay gives rise to a private right of action for compensatory or punitive relief.

*Id.* at 144. Although the language Caterpillar quotes from *Russell* discusses the types of damages available under §502(a)(1)(B), the Court's holding in *Russell* actually related to a different

---

individuals. (Docket No. 395-1 at 2-3 (Plaintiffs' brief)). In addition, class counsel indicate that they have removed Marie Chester, Imogene Gleichman, and Mary Thomas from the list of coverage termination issues. (Id. at 1 fn 2.)

section of ERISA, § 1109(a). The *Russell* Court only discussed § 502(a)(1)(B) for the purpose of demonstrating that its conclusion about the scope of damages available under § 1109(a) was "buttressed by the absence of any provision for the recovery of extra-contractual damages in § [502(a)(1)(B)][3]. . . ." *Int'l. Union UAW Local 91 v. Park-Ohio Indus., Inc.,* 876 F.2d 894, 1989 WL 63871 at *6 (6th Cir. 1989) (unpublished). The Sixth Circuit explained in its unpublished *Park Ohio* decision:

> Although the Supreme Court expressly limited its opinion to consideration of § 1109(a) and § [502(a)(2)], several circuits have extended the reasoning of *Russell* to preclude extra-contractual damages in cases brought under other subsections of § [502(a)]. . . . [W]e find *Russell* controlling and join the other circuits which have held that the language and structure, as well as the legislative history, of § [502] prohibit the allowance of such damages. . . . Accordingly, we affirm the district court's holding that extra-contractual compensatory damages are not available in actions under §§ [502(a)(1)(B)] or [502(a)(3)] of ERISA."

*Id.* at *7 (citations omitted).

The circuit cases cited by *Park-Ohio* in arriving at its holding related to the damages available under Section 502(a)(1)(B), including one from the Sixth Circuit, were based on claims raised under Section 502(a)(3), without any discussion of the differences between these two provisions. Plaintiffs argue that several of the cases cited by Caterpillar also blur the distinction between these two provisions. Plaintiffs argue that the Supreme Court's ruling in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) clarified that §502(a)(1)(B) provides both legal and equitable remedies, unlike §502(a)(3). Plaintiffs quote the following section of *Knudson*:

> In the very same section of ERISA as § 502(a)(3), Congress authorized "a participant or beneficiary" to bring a civil action "to enforce his rights under the terms of the plan," without reference to whether the relief sought is legal or

---

[3] For uniformity and ease of comprehension, the court will substitute the section numbers for ERISA when quoting cases that cite instead the United States Code section number.

equitable. 29 U.S.C. § 1132(a)(1)(B) (1194 ed.). But Congress did not extend the same authorization to fiduciaries. Rather, § 502(a)(3), by its terms, only allows for *equitable* relief.

534 U.S. at 220-21 (emphasis in original). The plaintiffs argue that the point of this comparison is that, unlike Section 502(a)(1)(B), Section 502(a)(3) does not authorize legal relief. Caterpillar counters that the plaintiffs' articulation of the issue as legal versus equitable remedies is a red herring, because the real issue is that their claim for extra-contractual consequential damages should be dismissed because they are not "benefits due under the terms of the plan." They further argue that *Knudson* was a case about § 502(a)(3) and that the language quoted by plaintiffs is *dicta*.

Because the court finds that the damages the plaintiffs seek are available under the LMRA, it does not reach the issue of their availability under ERISA.

B.      **Damages Available Under the LMRA**

1.      **Preemption**

Caterpillar argues that numerous courts have held that, in a hybrid ERISA/Section 301 case, a plaintiff may not circumvent the statutory scheme set forth in ERISA by recovering extra-contractual damages under the LMRA, when those damages are unavailable under ERISA. The parties cite district court opinions that reach opposite holdings on this issue. Caterpillar relies heavily on *Gilbert v. Doehler-Jarvis, Inc.*, 137 F.Supp. 2d 916 (N.D. Ohio 2001), *vacated as moot*, 2004 WL 2848545 (6th Cir. 2004) (finding appeal moot because company entered bankruptcy). *Gilbert* involved retirees seeking to establish that their healthcare benefits were lifetime benefits that could not be terminated by their employer. The *Gilbert* plaintiffs raised their claims under § 502(a)(3) of ERISA (not §502(a)(1)(B)) which is the basis of the *Kerns'* plaintiffs' claims) and Section 301 of the LMRA. They sought compensation for the amounts

they expended in seeking replacement insurance. After determining that the extra-contractual damages sought by plaintiffs were unavailable under ERISA, the *Gilbert* court held that "[t]he Retiree's action is, at its heart, an ERISA action. The fact that they chose to bring their action under § 301 as well as ERISA does not allow them to recover extracontractual damages that would not be available to them under ERISA." *Id* at 919.

For this proposition, *Gilbert* cited *Ragan v. Navistar Int'l Transp. Corp.,* No. 88-2623, 1989 WL 117486 (D. Kan. September 20, 1989), an unpublished district court opinion that held that, "to allow these [extra-contractual] damages under § 301 of the LMRA, as plaintiff suggests, for a claim based on a health benefits plan would constitute an inappropriate 'backdoor' means to an end which ERISA does not allow." *Id.* at *2.

*Ragan*, in turn, cites *United Steelworkers of America v. Connors Steel Co.*, 855 F.2d 1499 (11th Cir.1988), in which the Eleventh Circuit held that extra-contractual damages were not recoverable under § 502(a)(3) of ERISA or Section 301 of the LMRA. *Id.* at 1509-10. *Connors* based its decision on the Supreme Court's holding in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987), which held that ERISA pre-empts state law claims related to failure to properly administer a plan. *Connors* extended *Dedeaux* to hold that ERISA also pre-empts claims under Section 301 of the LMRA. *Connors*, 855 F.2d at 1509.

Caterpillar also cites *Stewart v. KHD Deutz of America Corp.*, 75 F.3d 1522 (11th Cir. 1996), a case which held that plaintiffs were entitled to a jury trial in a LMRA case and in hybrid LMRA/ERISA cases. In *dicta*, *Stewart* repeated the *Connors* holding that, "if the retirees sought extracontractual damages under section 301 of the LMRA in a LMRA/ERISA action, their 301 claim would be barred." *Id.* at 1528.

Finally, Caterpillar cites *Zielinski v. Pabst Brewing Co*, 360 F. Supp. 2d 908 (E.D. Wis. 2005), which held that permitting emotional distress damages under § 301 "would allow plaintiffs to do an impermissible 'end-run' around the restrictions of ERISA," *Id.* at 924. *Zielinski* cites for this proposition *Connors, Gilbert, Ragan*, an unpublished opinion from the Western District of New York (*LaForest v. Honeywell Int'l, Inc*., No. 03-6248, 2004 WL 1925490, at *9 (W.D.N.Y. Aug.27, 2004)), and *Stewart.* It is also important to note that the plaintiff retirees in *Zielinski* did not argue that damages for the premiums paid for replacement insurance were "available under the LMRA in a hybrid ERISA/LMRA action," and as a result, the court found that the retirees had "implicitly conceded that damages for premiums paid for replacement insurance are not available under the LMRA." *Zielinski*, 360 F. Supp. at 923.

The court declines to follow this line of cases as urged by Caterpillar. These cases build one on top of another based on the holdings in unpublished and vacated district court opinions and an Eleventh Circuit opinion that appears not to be in keeping with the language of the ERISA statute or with Sixth Circuit jurisprudence on this topic. First, as the plaintiffs correctly assert, in enacting ERISA, Congress was clear that it did not intend to modify or preempt any existing federal law, which would include the law developed under § 301 of the LMRA. ERISA provides at 29 U.S.C. § 1144(d): "Nothing in this title shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States. . . or any rule or regulation issued under any such law." In keeping with the text of the statute, the Sixth Circuit has held that the "preemption provision of ERISA, 29 U.S.C. § 1144, preempts state law but does not supersede the federal common law of labor-management relations." *Morse v. Adams*, 857 F.2d 339 (6th Cir. 1998) (citations omitted).

There are numerous Sixth Circuit cases that analyze claims under ERISA and the LMRA, including prior orders from this court in this matter. For example, in *Armistead v. Vernitron Corp.*, 944 F.2d 1287 (6th Cir. 1991), the court held that a breach of a collective bargaining agreement's provisions for vested retirement benefits constituted a "breach of contract under LMRA § 301," and, because the collective bargaining agreement ("CBA") was a benefits plan under ERISA, necessarily "was also a violation of ERISA." *Id.* at 1298. The court agrees with the plaintiffs' characterization that the *Armistead* court treated the ERISA claim as derivative, or secondary to, the LMRA claim.

In determining the accrual date of a § 301 cause of action for nonpayment of retiree benefits, the Sixth Circuit held the following:

> [W]e now turn to the issue of whether 29 U.S.C. § 1001 et seq. (ERISA) provides the exclusive remedy for plaintiffs. All parties assert that ERISA does not preempt the § 301 action and that an action could be maintained under either statute or both simultaneously. We agree. The court's decisions make it clear that such an action may be brought under ERISA . . . or under § 301. . . or both statutes simultaneously. . . . Accordingly, we conclude that ERISA is not the exclusive remedy and that the plaintiffs may maintain an action under § 301.

*Biros v. Spaulding-Evenflo Co. Inc.*, 934 F.2d 740, 742 (6th Cir. 1991) (citations omitted). The court then analyzed the case under Section 301 to determine the accrual date of the action.

In a case involving a dispute over whether the plaintiffs had a right to a jury trial in a hybrid ERISA/LMRA claim, the Sixth Circuit reaffirmed its holding in *Biros*:

> The district court also concluded, erroneously, that the plaintiffs' case is controlled by ERISA § 502(a)(1)(B) under which we have held that there is no right to a jury trial. . . . In their briefs to this court, the parties devote considerable space to arguing the question of whether ERISA preempts the LMRA and the common law of contracts, and, if so, whether a jury trial is allowed under ERISA. We do not address this argument any further because we have stated quite clearly in prior decisions that plaintiffs may, under some circumstances, bring claims for retirement benefits under either ERISA or the LMRA, or under both statutes

simultaneously. *E.g., Biros v. Spalding–Evenflo Co.*, 934 F.2d 740, 742 (6th Cir.1991).

*Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 659 n.11 (6th Cir. 1996).

Thus, in keeping with the plain language of ERISA and with Sixth Circuit precedent, this court finds that ERISA is not the exclusive avenue for relief in a hybrid ERISA/LMRA case.

### 2. The Merits of the LMRA Claim

The court turns to the LMRA to determine whether Caterpillar is liable for the surviving spouses' costs in purchasing replacement insurance and other medical costs they would not have incurred if Caterpillar had honored its agreement. In *UAW v. Yard-Man*, 716 F.2d 1476 (6th Cir. 1983), the Sixth Circuit considered claims by retirees that their employer had breached the collective bargaining agreement by terminating life and health insurance benefits of retired employees when the CBA expired and substituting the payment of "lump sum payments of the present value of the supplemental pension rights directly to each retiree." *Id.* at 1478. In determining whether the parties intended for retiree insurance benefits to continue beyond the expiration of the CBA, the court analyzed the issue under § 301:

> The enforcement and interpretation of collective bargaining agreements under § 301 is governed by substantive federal law. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456 (1957). However, traditional rules for contractual interpretation are applied as long as their application is consistent with federal labor policies. Id. at 457, 77 S.Ct. at 918.

*Id.* at 1479.

"In cases alleging violations of the LMRA, courts have held that the purpose of any award 'is to make employees whole for the losses suffered.'" *UAW Local 540 v. Baretz*, 159 F.Supp.2d 968, 972 (E.D. Mich. 2001) (quoting *Aguinaga v. United Food and Commercial Workers Int'l Union*, 720 F.Supp. 862, 870 (D.Kan. 1989)). Accordingly, when a court finds that

an employer breached its CBA with its employees, it "should attempt to fashion a remedy that will place the employees in the position they would have attained had the agreement been performed." *Id.* at 973 (citing *Int'l Bhd. of Elec. Workers v. A-1 Elec. Servs., Inc*., 535 F.2d 1, 4 (10th Cir.1979)).

The court finds that Caterpillar must compensate the surviving spouses for the costs of substitute insurance coverage and any out-of-pocket expenses that they would not have incurred but for Caterpillar's violation of their agreement. *See Baretz*, 159 F. Supp.2d at 973-75 (requiring employer to pay costs of replacement insurance and out-of-pocket medical expenses); *Yolton v. El Paso Tennessee Pipeline Co*, 2008 WL 275685 (E.D. Mich. 2008) (same result, also in a hybrid ERISA/LMRA case). The court agrees with the court in *Yolton*, which, in holding that the company was responsible for the costs of substitute insurance and out-of-pocket expenses, found that "[a]ny other result would be inequitable, as an employer could terminate retiree health insurance coverage and completely avoid paying the costs of that coverage for the months or even years that it takes to litigate whether the retirees are entitled to have their coverage reinstated." *Id.* at *4.

III.    **Motion for Summary Judgment on Individual Claims**

A.  **Plaintiffs Who Did not Provide Deposition Testimony**

Of the plaintiffs at issue in Caterpillar's motion for summary judgment, the court's rulings leave twelve surviving spouses who seek to be reimbursed for the cost of replacement insurance and out-of-pocket expenses. These surviving spouses were asked to complete a questionnaire created by the attorneys to determine their damages and their reasons for terminating their Caterpillar insurance. Caterpillar also sought to depose these twelve

individuals. The court grants Caterpillar's motion for summary judgment as to the claims of

Jewlee Gulley, Viola Spencer, and Jeannette Street because these individuals were not produced

for depositions nor did they submit completed questionnaires. Because these individuals have

produced no evidence in response to Caterpillar's motion for summary judgment, their claims

will be dismissed.

Josefina Ramirez submitted a questionnaire, which has her name on the signature line at

the end of the form and is dated January 21, 2014, but she has not been deposed. Class counsel

represent that she may spend time in Mexico, as her birth certificate and marriage certificate are

both from Mexico. (Docket No. 399 #19, Exhibit 45). The questionnaire, which appears to have

been completed by Ms. Ramirez, indicates that she terminated her Caterpillar insurance because

the monthly premium was "too much premium to pay." However, the court agrees with

Caterpillar's objection that the questionnaire is inadmissible hearsay, and as a result will grant

the motion for summary judgment on her claim. *See Smoot v. United Transp. Union*, 246 F.3d

633, 649 (6th Cir. 2001) ("'[I]t is well settled that only admissible evidence may be considered

by the trial court in ruling on a motion for summary judgment.'") (quoting *Wiley v. United*

*States*, 20 F.3d 222, 226 (6th Cir.1994)).

Hattie Grace did not herself testify but did provide deposition testimony from an

individual who has her power of attorney. Her claim will be addressed below.

### B. Plaintiffs Who Presented Evidence That They Obtained Replacement Insurance Because of Caterpillar's Imposition of Premiums

There remain eight surviving spouses seeking damages for replacement insurance and

out-of-pocket expenses-- Beverly Carson, Wilma Farrenholz, Hattie Grace, Sharon Houser,

Laura Mansfield, Florence Miller, Charlotte Seibert, and Nancy Virden. It is likely that these plaintiffs' claims can be resolved on summary judgment, but the court only has before it Caterpillar's motion for summary judgment. In the interest of judicial economy, the court invites these eight remaining plaintiffs to file a motion for summary judgment so the court can properly consider whether there is a dispute as to a genuine issue of material fact.

The court will rule on certain of Caterpillar's arguments as to these individuals to narrow the issues for future briefing. First, Caterpillar argues the court should grant summary judgment on the claims of surviving spouses who indicated on the written questionnaires and in deposition testimony that the imposition of premiums was the cause for their terminating Caterpillar's insurance. Caterpillar argues that their assertions are not sufficient to satisfy their burden of proof that Caterpillar's imposition of premiums was the proximate cause of the termination of insurance, as opposed to other costs the court held were permissible or because of other reasons unrelated to costs. Apparently seizing on the language used by many of these surviving spouses that they terminated their Caterpillar insurance because they could no longer afford it once the premiums were imposed, Caterpillar argues that in response to its motion for summary judgment, these plaintiffs' were obligated to present proof that before canceling their Caterpillar insurance, they took steps to determine whether Caterpillar had "alternative plan options or elections available at lower cost," or met with a financial advisor to determine whether maintaining the insurance was financially feasible. (Docket 387-1 at 15.)

Thus, Caterpillar seems to believe that some sort of "objective" proof that the surviving spouses could not *afford* the unlawful Caterpillar premium is required to demonstrate proximate cause. Plaintiffs' class counsel represent that through the course of limited discovery on the issue of causation only, the parties narrowed down the initial list from sixty-two potential individuals

14

to the current list. (Docket 395-1 at 24.) Clearly, many plaintiffs did not indicate that the imposition of premiums was the proximate cause of their terminating Caterpillar's insurance and incurring damages. Only the plaintiffs who offered testimony that the premiums were the proximate cause of their decision are at issue here. The court is unaware of, and Caterpillar did not cite any, authority for its positions that (1) plaintiffs must provide proof of lack of *affordability* as opposed to proof that the imposition of premiums was the proximate cause of their terminating Caterpillar's insurance, or (2) that plaintiffs' testimony as to the cause of their terminating Caterpillar's insurance is not sufficient to withstand summary judgment. It would seem to the court that whether Caterpillar's unlawfully imposed premiums were "affordable" or not, the plaintiffs, as rational actors in the marketplace, would be entitled to mitigate their damages by seeking and obtaining lower cost insurance or deciding to go without insurance. In the parties' subsequent briefs, the court requests that the parties address these legal questions and support their positions with legal authority.

Second, Caterpillar argues that the surviving spouses did not mitigate their damages. As an initial matter, mitigation of damages is an affirmative defense, which Caterpillar did not raise in its Answer to plaintiffs' Complaint. In fact, this court explicitly held in its summary judgment order filed March 26, 2010 that "[t]he court has concluded that lifetime benefits vested for the Kerns class and Caterpillar has no viable affirmative defenses." (Docket No. 262 at 39.) At this late date, Caterpillar has waived this defense.

Even if it had not been waived, the court finds the argument to be without merit. These surviving spouses, faced with the company's unlawful imposition of premiums that they have testified they could not afford, did indeed mitigate their damages by obtaining less expensive insurance. Caterpillar offers no suggestion as to how these individuals should have mitigated

their damages instead of obtaining lower cost insurance. Had an individual continued paying premiums and as a result been forced to declare bankruptcy or to face foreclosure on a home or any other of a myriad of financial woes that might have befallen her, Caterpillar likely would have objected that the individual should have mitigated her damages by obtaining replacement insurance at lower cost.

As it is, at least one of these plaintiffs, Ms. Beverly Carson, managed to pay only three months of premiums after the death of her husband, then stopped making the payments, declared bankruptcy, and went uninsured until becoming eligible for Medicare more than two years later. (Ex. 1, 27-28). That Ms. Carson had to declare bankruptcy and then continue to be uninsured for lack of ability to pay a monthly premium of $182.27 demonstrates her financial vulnerability. Plaintiff Nancy Virden only managed to pay the premium one month after the death of her husband. This year, she applied for Medicaid after a period of being without insurance, and she has health conditions that require prescriptions and regular medical care. (Ex. 1, 51-53). Caterpillar cites *Grothen v. Marshall Field &* Co, 625 N.E.2d 343, 347 (Ill. App. 1 Dist. 1993) for the proposition that, under Illinois law, the doctrine of mitigation of damages "imposes a duty upon the injured party to exercise reasonable diligence and ordinary care in attempting to minimize the damages after injury has been inflicted." The court finds that these plaintiffs, who obtained less expensive insurance or went uninsured, mitigated their damages the best they could given their financial situations.

1. **Plaintiff Seeking Cost of Replacement Insurance for Adult Disabled Child**

Wilma Farrenholz has submitted a questionnaire, supporting documentation, and was deposed. Caterpillar's motion for summary judgment on her claim will be denied. At the time Caterpillar imposed a premium on Ms. Farrenholz, her adult disabled child was also on the

policy, and, because of the imposition of premiums, she canceled her Caterpillar policy and contracted for less expensive insurance coverage for herself and her adult dependent child. Caterpillar objects that the child cannot recover damages in her own right because she is not a member of the class and that Ms. Farrenholz cannot recover for her because Ms. Farrenholz's claims are based on her status as a surviving spouse, not based on coverage for dependents of a surviving spouse.

The court disagrees. Under the 1992 unilateral implementation, Ms. Farrenholz was entitled to premium-free insurance coverage for herself and her dependent adult child. Caterpillar is liable for the amounts Ms. Farrenholz expended for replacement insurance for herself and her dependent child as well as out-of-pocket expenses for both individuals that would have been covered under the agreement. This result is necessary in order to provide Ms. Farrenholz with a remedy that will put her "in the position [she] would have attained had the agreement been performed." *Baretz*, 159 F.Supp.2d at 973.

2. **Plaintiff With Alzheimer's Disease**

Last, the court turns to Hattie Grace, who could not be deposed because she has Alzheimer's and does not even recognize her family members. Her daughter-in-law, Naomi Grace, who has Hattie Grace's power of attorney, submitted a questionnaire and was deposed. She testified that she had conversations with Hattie Grace before she was diagnosed with Alzheimer's that led to the decision to terminate the Caterpillar coverage because the premiums were no longer affordable. Caterpillar objects that Naomi Grace's testimony would be inadmissible hearsay and that, without Hattie Grace testifying, she cannot substantiate her claim. Class counsel may have an evidentiary argument that would allow Naomi Grace to testify to what Hattie Grace told her. Further, Naomi Grace's testimony indicates that she herself was an

integral part of the decision-making on the issue of terminating the Caterpillar insurance, and she could certainly testify to her personal knowledge about this matter.

Caterpillar's motion for judgment against these eight plaintiffs will be held in abeyance. The court would find it helpful for these eight plaintiffs to file a motion for summary judgment pursuant to Rule 56(c).[4] Having ruled that these eight plaintiffs are entitled to damages for *replacement insurance and out-of-pocket expenses they would not have incurred if Caterpillar* had honored its agreement with them, it appears to the court that there may not be a genuine dispute that Caterpillar's breach of its agreement was the proximate cause of their incurring these damages. As indicated, the court would find it helpful for the parties to brief the issue of whether plaintiffs must prove that Caterpillar's premiums were not "affordable" in some objective sense and, if so, what evidence they must present to establish that fact. Conversely, if plaintiffs are not required to prove they could not "afford" the insurance and, instead, need only provide evidence that the imposition of premiums was the proximate cause of their discontinuing their Caterpillar insurance, the court would also find it helpful for the parties to brief whether any evidence other than plaintiffs' testimony is necessary to prove that the imposition of premiums was the proximate cause. If there are any other genuine disputes of material fact that would preclude summary judgment for these eight plaintiffs in light of the court's rulings, the parties should obviously identify those as well.

---

[4] Rule 56(f) provides, "[a]fter giving notice and a reasonable time to respond, the court may: . .. . (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." The Advisory Committee Notes on the 2010 Amendments suggest, "[i]n many cases, it may prove useful first to invite a motion; the invited motion will automatically trigger the regular procedure of subdivision (c)."

**CONCLUSION**

For the foregoing reasons, the Court will deny Caterpillar's motion for summary judgment in part and grant it in part. The portion of its motion that relates to surviving spouses who were themselves Caterpillar employees is moot, as class counsel has withdrawn those claims. The portion of its motion the court construes as a motion to strike certain damages will be denied. Under Section 301 of the LMRA, Caterpillar is liable for the cost of replacement insurance and out-of-pocket expenses that would not have been incurred if it had honored the 1992 unilateral implementation for the surviving spouse plaintiffs who obtained alternative insurance or became uninsured. The portion of Caterpillar's motion that requests judgment against Caterpillar's motion for summary judgment against Jewlee Gulley, Viola Spencer, Jeannette Street, and Josefina Ramirez is granted because these individuals have produced no admissible evidence demonstrating their damages or reasons for terminating their Caterpillar insurance. Caterpillar's motion requesting judgment against Beverly Carson, Sharon Houser, Laura Mansfield, Florence Miller, Charlotte Seibert, Nancy Virden, Wilma Farrenholz, and Hattie Grace will be held in abeyance to be considered as a cross motion for summary judgment upon these plaintiffs' filing of a summary judgment motion as the court has requested.

An appropriate order shall issue.

                                          _____
                                          ALETA TRAUGER
                                          UNITED STATES DISTRICT JUDGE