UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JUDITH K. KERNS, et al., ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3: 06-CV-1113 |
| ) | Judge Trauger |
| CATERPILLAR INC., ) | |
|     Defendant/Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| INTERNATIONAL UNION, UAW, et al., ) | |
|     Third-Party Defendants ) | |

## **MEMORANDUM**

This is a class-action lawsuit brought on behalf of surviving spouses of former employees of Caterpillar, Inc. ("Caterpillar") who retired on or after March 16, 1998, and before January 10, 2005. This matter is before the court on cross motions for summary judgment on the claims brought by eight individual class members against Caterpillar, Inc. ("Caterpillar"). Docket Nos. 385 (Caterpillar's motion), 409 (Plaintiffs' motion). For the reasons stated herein, judgment will be entered for the eight plaintiffs at issue: Beverly Carson, Wilma Farrenholz, Hattie Grace, Sharon Houser, Laura Mansfield, Florence Miller, Charlotte Seibert, and Nancy Virden. The court also will order Caterpillar to re-enroll these plaintiffs in its insurance plan without premiums.

### **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

Because the court has recounted the factual and procedural history of this case numerous times, familiarity with the facts will be assumed.[1] During the time period relevant to this lawsuit, the

---

[1] This case and *Winnett v. Caterpillar*, Case No. 3:06-0235, are related but not consolidated cases. By prior order dated March 26, 2010, this court granted the International

1

International Union, UAW ("UAW"), was the exclusive bargaining representative for employees at various Caterpillar facilities, primarily in Illinois. Under federal law, Caterpillar was obligated to negotiate with the UAW before making changes to the terms and conditions of employment. The labor agreement negotiated between Caterpillar and the UAW in 1988 (the "1988 Central Labor Agreement") included provisions for health insurance benefits, including retiree health care, as set forth in an Insurance Plan Agreement between the parties, along with a Group Insurance Plan (the "1988 GIP"). The 1988 GIP provided that, following the death of a retired employee, coverage for the surviving spouse "will be continued . . . for the remainder of his surviving spouse's life without cost." Docket No. 243, at 7.

Upon the expiration of the 1988 Central Labor Agreement, Caterpillar and the UAW were unable to reach a new agreement. One area of dispute was the proposed changes to medical benefits for existing and future retirees. Unable to reach a new agreement, on March 31, 1992, Caterpillar advised the UAW and Caterpillar's employees that it would unilaterally implement portions of its final contract offer, which would result in increased medical costs for the retirees.

On November 20, 1992, as the parties continued to be unable to reach a new agreement, Caterpillar advised the UAW that, effective December 1, 1992, it would implement additional provisions from its final offer, including caps on the amount that Caterpillar would pay for future retiree health coverage (the "1992 unilateral implementation"). However, the December 1992 unilateral implementation did *not* change the following language from the 1988 GIP: "Coverage [for a surviving spouse] will be continued following the death of a retired Employee for the remainder of his surviving spouse's life without cost." Docket No. 243, at 10.

---

Union, UAW's motions to dismiss Caterpillar's Third-Party Complaint against it in both *Kerns* and *Winnett*. (Docket No. 263.) Subsequently, through a series of decisions from this court and the Sixth Circuit, the court dismissed the *Winnett* plaintiffs' claims and closed that case. (Docket Nos. 326, 327.

In March 1998, the parties finally ratified a successor agreement to the 1988 Central Labor Agreement. The 1998 GIP again retained the provision in the 1988 GIP providing that surviving spouses' medical coverage would be continued following the death of a retired employee for the remainder of the surviving spouse's life without cost.

After much negotiation, the 2004 labor contract removed the "without cost for life" language pertaining to surviving spouse medical benefits that, in form and/or substance, had been in the 1988, 1992, and 1998 Agreements. The 2004 GIP contains new language that clearly specifies that both retirees and their surviving spouses must contribute toward their medical costs.

In October 2005, Caterpillar mailed letters to surviving spouses indicating that, effective January 1, 2006, they would be required to pay a health care premium to maintain their coverage. Shortly thereafter, surviving spouses began sending Caterpillar complaints that they were entitled to lifetime coverage without cost, based, among other things, on letters Caterpillar had sent them following the death of their Caterpillar-retiree spouse, assuring them they would be entitled to coverage for life "without cost."

In April 2006, shortly after this lawsuit was filed, Caterpillar announced it would "waive" premiums for individuals whose spouses retired, or were eligible to retire, between January 1, 1992 and January 10, 2005 and then died prior to January 10, 2005, the effective date of the 2004 labor agreement. But Caterpillar continues to charge monthly premiums for surviving spouses whose Caterpillar-retiree spouse died after January 10, 2005—after the 2004 labor agreement that removed the "without cost" language as to surviving spouses took effect.

On March 26, 2010, the court entered judgment as a matter of law for the *Kerns* plaintiffs, finding Caterpillar liable for violations of Section 301 of the Labor-Management

Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), for improperly charging premiums to the class of individuals whose spouses retired from Caterpillar prior to the ratification of the 2004 Labor Agreement but died after its ratification.[2] Docket Nos. 262, 263. The court found that "a surviving spouse is not precluded from relief simply because her retiree-spouse happened to die after the ratification of the 2004 agreement." Docket No. 262, at 38–39. The court further held that lifetime no-cost medical benefits had vested for the *Kerns* class and that Caterpillar had no viable defenses. *Id.* at 39. However, upon consideration of the guidelines set forth by the Sixth Circuit in *Reese v. CNH America LLC*, 574 F.3d 315 (6th Cir. 2009), the court concluded that, although Caterpillar's imposition of premiums was unlawful, its imposition of new deductibles, co-insurance, and increased out-of-pocket costs *were* permissible. Docket No. 262, at 39–41.

On August 20, 2014, the court ruled on the portion of Caterpillar's Motion for Summary Judgment on Damages that it interpreted as a motion to strike plaintiffs' claims for damages for replacement insurance and out-of-pocket medical expenses. . Docket Nos. 407, 408 (Court Order and Memorandum). In that motion, Caterpillar conceded that, under the court's prior rulings, surviving spouses who paid premiums to stay enrolled in Caterpillar's insurance plan are entitled to damages for the amount they paid in unlawfully imposed premiums, but it argued that surviving spouses who *terminated* Caterpillar's insurance plan because of Caterpillar's breach are not legally entitled, under either ERISA or the LMRA, to recover damages for the cost of obtaining substitute coverage and reimbursement for out-of-pocket healthcare costs that would

---

[2] Caterpillar did not charge premiums to class members whose spouses both retired and died between 1992 and 2005. Docket No. 262, at 37.

4

have been covered if Caterpillar had honored the 1988 GIP. The court disagreed and held that the surviving spouses who terminated their insurance because of the unlawful imposition of premiums were entitled to those damages under the LMRA. The court declined to reach the issue of whether the plaintiffs would be entitled to those damages under ERISA.

As to the portion of Caterpillar's motion that sought summary judgment on the claims brought by twelve surviving spouses who cancelled Caterpillar's insurance and sought damages for the cost of replacement insurance and out-of-pocket expenses, the court entered judgment for Caterpillar on the claims of four plaintiffs who had not produced sufficient evidence to withstand summary judgment. As to the remaining eight plaintiffs, the court indicated that it would hold Caterpillar's motion for summary judgment in abeyance and invited plaintiffs to file a cross motion for summary judgment for those individuals. The court solicited this motion in light of its holding that these eight plaintiffs are, in fact, entitled to damages for replacement insurance and out-of-pocket expenses caused by Caterpillar's breach, and the apparent lack of genuine dispute that Caterpillar's breach was the proximate cause of these surviving spouses' incurring these damages.

To narrow and direct the issues for future briefing, the court reiterated its prior holding that Caterpillar had waived any argument that the surviving spouses failed to mitigate their damages, as it had not raised the issue as an affirmative defense in its Answer to the plaintiffs' Complaint. Docket No. 407, at 15 (citing Docket No. 262, at 39). The court further held that, even if Caterpillar had not waived a mitigation defense, it was without merit. The court also noted that Caterpillar seemed to believe that plaintiffs were obligated to present "objective" proof that, before cancelling their Caterpillar insurance, each plaintiff took steps to determine whether Caterpillar had alternative plan options available at lower cost or met with a financial

advisor to determine whether maintaining the insurance was financially feasible. The court noted the lack of legal authority cited by Caterpillar for this position and asked the parties to brief the issue.

The eight surviving spouses filed the motion for summary judgment as requested by the court, and that motion is now ripe for review as a cross motion to that previously filed by Caterpillar. Given the court's prior orders, the question now before the court is whether Caterpillar's unlawful imposition of premiums was the proximate cause for these eight surviving spouses' termination of Caterpillar's insurance. These plaintiffs also request that the court order Caterpillar to re-enroll these plaintiffs in the Caterpillar insurance plan, without monthly premiums.

## ANALYSIS

### I. Summary Judgment Standard

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed .R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. 242 at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## II.  Liability

In cases arising under Section 301 of the LMRA, "it is federal substantive law which controls resolution of the contractual dispute." *UAW v. Yard-Man*, 716 F.2d 1476, 1487 (6th Cir. 1983). "In the absence of controlling federal law principles, however, we may look for guidance to general common law principles, including the substantive law of the state in which the contract arose." *Id.* (citation omitted). In Section 301 cases, "traditional rules for contractual interpretation are applied as long as their application is consistent with federal labor policies." *Id.* at 1479.

"In cases alleging violations of the LMRA, courts have held that the purpose of any award 'is to make employees whole for the losses suffered.'" *UAW Local 540 v. Baretz*, 159 F. Supp. 2d 968, 972 (E.D. Mich. 2001) (quoting *Aguinaga v. United Food & Commercial Workers Int'l Union*, 720 F. Supp. 862, 870 (D. Kan. 1989)). Accordingly, when a court finds that an employer breached its collective bargaining agreement with its employees, it "should attempt to fashion a remedy that will place the employees in the position they would have attained had the agreement been performed." *Id.* at 973 (citing *Int'l Bhd. of Elec. Workers v. A-1 Elec. Servs., Inc.*, 535 F.2d 1, 4 (10th Cir. 1979)).

7

Caterpillar argues that "in their moving papers Plaintiffs have offered no objective evidence to establish the requisite causal link between Caterpillar's imposition of premiums to the class members and their alleged out-of-pocket expenditures" and that they, instead, rely on "the class members' unsupported assertions to the effect that they cancelled their Caterpillar insurance because it was 'too expensive.'" Docket No. 429, at 2–3 (Caterpillar's Response). Caterpillar denies that it espoused an "objective affordability" theory and blames the class members for framing the issue in these terms when they testified "that they cancelled their Caterpillar insurance because they deemed it 'too expensive.'" *Id.* Caterpillar has created a red herring by arguing that the word choice used by lay witnesses in effect created a legal requirement that plaintiffs must prove that they could not afford the unlawfully imposed premiums. In fact, Caterpillar argues that not only must plaintiffs prove they could not afford the premiums, but they must also offer some sort of *objective proof* above and beyond their own testimony to prove the lack of affordability.

Although Caterpillar's briefs are filled with this unhelpful argument, it nonetheless cites the correct legal standard—that is, whether Illinois or Tennessee law governs this dispute, in order to recover for breach of contract, a plaintiff must prove that that the breach was the proximate cause of her damages. *See FM Indus., Inc. v. Citicorp Credit Servs., Inc.*, No. 07-1794, 2008 WL 717792, at *6 (N.D. Ill. Mar. 17, 2008) ("To prevail on its breach of contract claim, [plaintiff] must prove it suffered damages as a proximate result of [defendant's] breach." (applying Illinois law); *Underwood v. Nat'l Alarm Serv., Inc.*, No. E2006-00107-COA-R3CV, 2007 WL 1412040, at *5 (Tenn. Ct. App. May 14, 2007) ("[A] plaintiff is entitled to recover damages for breach of contract if defendant's breach of contract was the direct and proximate cause of the damages which plaintiff allegedly sustained, without the contributing fault of the

plaintiff."). Plaintiffs are not required to prove they were unable to afford Caterpillar's premiums, much less provide "objective proof" of this fact. They need only show that the unlawfully imposed premiums were the proximate cause of their termination of Caterpillar's health insurance.

Caterpillar next argues that it is not liable for these eight surviving spouses' damages because their decision to cancel their Caterpillar insurance coverage was not foreseeable to Caterpillar. *See Am. Anodco, Inc. v. Reynolds Metals Co.*, 743 F.2d 417, 424 (6th Cir. 1984). Caterpillar argues that the fact that only eight surviving spouses cancelled their Caterpillar insurance demonstrates that such a decision was unforeseeable because the majority of class members did not react in this manner. This argument is without merit and is not supported by any of the cases cited by Caterpillar or by any other retiree health-care cases reviewed by the court. It was entirely foreseeable that imposing premiums on a group of surviving spouses would result in some individuals' being unwilling or unable to pay the premiums, thereby losing their only insurance or, as was the case for some of the surviving spouses, losing their secondary insurance.[3] The risk that the surviving spouses would be unable to afford to pay premiums for their insurance was created by Caterpillar's breach and must be borne by Caterpillar, the defaulting party.

Caterpillar further argues that these eight surviving spouses did not take any action to give the company a reason to believe they would suffer such consequential damages, such as contacting the company to discuss their circumstances prior to deciding to cancel their insurance

---

[3] The plaintiffs also argue that, out of about 570 class members, only about 218 paid Caterpillar any premiums. After this lawsuit was filed, Caterpillar "waived" the premiums of surviving spouses whose retiree spouse died before January 10, 2005 and for some surviving spouses who objected to the imposition of premiums. Docket No. 430, at 16.

or contacting the company *after* cancelling their insurance but before incurring additional expenses. Aside from the fact that these plaintiffs were not legally required to take such actions, this argument is entirely disingenuous. As the court's brief recitation of the facts above demonstrates, surviving spouses quickly objected to Caterpillar's October 2005 letter indicating that, effective January 1, 2006, they would have to pay premiums to maintain the health insurance the company had always promised would be "without cost for life." Perhaps these *particular* eight surviving spouses did not notify Caterpillar with their objections, but *some* surviving spouses did object to Caterpillar's announcement of its impending unlawful action soon after receiving notice of Caterpillar's intention to breach its agreements. Furthermore, by April 2006, this lawsuit was filed as a class action to protect the rights of these plaintiffs under the 1988 GIP. In February 2007, the plaintiffs provided their answers to interrogatories, which further clarified the categories of damages and types of relief they were seeking. Almost nine years after the filing of this lawsuit, and almost five years after this court entered judgment for plaintiffs as to liability, Caterpillar has yet to re-enroll these plaintiffs in the premium-free health insurance coverage the company promised to them and to their now-deceased spouses and to which this court held years ago they had a vested right.

### III. Plaintiffs' Evidence

<u>Beverly Carson</u>: After her husband's death, Ms. Carson made three monthly premium payments of $182.27 per month before cancelling her coverage. Caterpillar refunded her one month of coverage. She testified that, after her husband died, her finances were "crap." Docket No. 399-2, at 9. She filed for bankruptcy and went uninsured for over two years, until she became eligible for Medicare.

Wilma Farrenholz: Caterpillar argues that Ms. Farrenholz should not prevail on her claim for damages because she testified that she switched to a different insurance plan that gave her "better coverage for less money." Ms. Farrenholz has an adult disabled dependent daughter. Ms. Farrenholz paid Caterpillar premiums for herself and her daughter for about six months. She testified that she "decided to switch [insurance companies] because the premiums were going up, and I thought it was too much." Docket No. 399-7, at 6.

Hattie Grace: Ms. Grace is eighty years old, has Alzheimer's, and lives in a nursing home. She no longer recognizes her son or her daughter-in-law, Naomi Grace, who serves as her power of attorney and was deposed in this matter. Naomi Grace participated in discussions with Hattie Grace about her decision to terminate the Caterpillar insurance. Naomi Grace testified that Hattie Grace felt that she could not financially manage the premiums. After terminating the Caterpillar coverage, Hattie Grace went on Medicare and later Medicaid. Caterpillar argues that Hattie Grace is not entitled to damages based on Naomi Grace's testimony that she had a discussion with Hattie Grace about cancelling the Caterpillar insurance, in which Hattie Grace had stated, "I don't use it, I don't need it, I don't want it." According to Caterpillar, this testimony undercuts the argument by plaintiffs' counsel that plaintiffs were forced to cancel insurance because of the premiums. Viewing this statement along with the rest of Naomi Grace's testimony, the court finds that there is no genuine dispute that Hattie Grace terminated her Caterpillar insurance because of the imposition of premiums.

Caterpillar further argues that judgment should not be entered for Hattie Grace because her claim is only supported by the inadmissible hearsay testimony of Naomi Grace. Hattie Grace's counsel points out that the statements to which Naomi Grace testified are not offered for the truth of the matter asserted, but only for evidence about what Hattie Grace believed to be true

and what her motivation was for terminating the Caterpillar insurance. *See* Fed. R. Evid. 801(c) (defining hearsay as an out-of-court statement offered to prove the truth of the matter asserted). Furthermore, even if the statement were introduced to prove the truth of the matter, Ms. Grace's counsel has identified other hearsay exceptions that would apply to this testimony.[4]

---

[4] Federal Rule of Evidence 803 provides:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: . . . (3) Then-Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Hattie Grace's out-of-court statement about her motive, intent, and plan to drop Caterpillar's health care plan because of the premiums would be admissible as a hearsay exception, even if offered to prove the truth of the matter asserted.

Federal Rule of Evidence 807, the residual hearsay exception, may also provide an avenue for admissibility of this evidence, as all of the conditions of the exception appear to be satisfied:

> (a) In General. Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
>
> > (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> >
> > (2) it is offered as evidence of a material fact;
> >
> > (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> >
> > (4) admitting it will best serve the purposes of these rules and the interests of justice.
>
> (b) Notice. The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the

Sharon Houser: Sharon Houser had health care coverage under her own plan through her past employment, which was her primary insurance. Her husband's Caterpillar policy was secondary. When Caterpillar informed her it would begin charging her $101 in premiums to maintain the Caterpillar insurance, she immediately terminated the coverage and lost the benefit of having dual coverage.

Laura Mansfield: By the time Caterpillar informed Ms. Mansfield it would begin charging her $87 per month in premiums, Ms. Mansfield had re-married. Her new husband was also a Caterpillar retiree. She remained eligible for Caterpillar's insurance as a surviving spouse of her first husband, despite her remarriage. The cost of being covered under her new spouse through Caterpillar was only $55 a month. She testified that she changed coverage because of the imposition of premiums. There is no genuine dispute that the imposition of premiums caused Ms. Mansfield to terminate her surviving-spouse coverage.

Florence Miller: Ms. Miller had health-care coverage under her own plan through her past employment, which was her primary insurance. Her husband's Caterpillar policy was secondary. When Caterpillar informed her she would have to pay $111 monthly to keep the Caterpillar insurance, she immediately terminated it and lost any benefit from having secondary insurance.

Charlotte Seibert: Ms. Seibert paid Caterpillar's premiums of $87 a month in 2006, $111 in 2007, and $135.31 in 2008. At some point, she added coverage from her former employer, for which she initially paid about $20 a month and now pays almost $50 a month. In August 2008,

---

      statement and its particulars, including the declarant's name and address, so that
      the party has a fair opportunity to meet it.

when she became eligible for Medicare, she terminated her Caterpillar coverage to save money on premiums. She believes the Caterpillar coverage is better than what she has through her former employer and Medicare. Ms. Seibert is the only one of these plaintiffs Caterpillar has attempted to re-enroll. There is some disagreement between the parties about whether she is enrolled or not. Caterpillar states that she declined an offer to re-enroll because she did not want anything to affect her coverage from her former employer. She states that Caterpillar re-enrolled her, without premiums, effective January 1, 2014. In any event, she maintains that she does want the coverage from Caterpillar without premiums to which she is legally entitled.

Nancy Virden: After Ms. Virden's husband died, she paid only one month of Caterpillar's premium of $182.27 for coverage in June 2009. She states that she was unable to afford the premium. She has been uninsured since losing her Caterpillar coverage. She has serious health conditions that require prescriptions and regular medical care. Caterpillar objects to her claim on the basis that she testified that, at the time she stopped paying premiums for her Caterpillar insurance, she would have been unable to afford co-payments, deductibles, or anything else. Caterpillar oversimplifies Ms. Virden's testimony. She testified that, at the time of her husband's death, she had been making co-payments for medical expenses connected to her heart attack and her resulting prescription drugs. When asked what portion of a prescription drug co-payment she would be unable to make, she said, "[t]he full amount of the prescription." Docket No. 399-26, at 12. When asked the cost of the prescription to which she was referring, she said it was around $180. When asked if she would have been able to make co-payments, she testified, "I'm not sure." *Id.* Whether or not Ms. Virden was certain that she would have been able to continue making co-payments or deductibles is not dispositive of this question. After reviewing her deposition testimony, it is clear to the court that there is no genuine dispute that

Caterpillar's imposition of premiums was the proximate cause of Ms. Virden's decision to terminate her Caterpillar coverage and that she had, in fact, been managing to pay her deductible and co-payment amounts prior to terminating insurance. *See Entergy Ark., Inc. v. Nebraska*, 226 F. Supp. 2d 1047, 1153 (D. Neb. 2002) ("[Plaintiff] has proven its damages with the requisite degree of certainty . . . . The law does not allow [defendant] to breach its contract, and thereby inject uncertainty into the equation in order to create a defense to damages.").

The court finds no genuine dispute that Caterpillar's unlawful imposition of premiums was the proximate cause for each of these women's decision to terminate Caterpillar's insurance plan. Accordingly, the court will enter judgment for each of these plaintiffs. They are each entitled to be compensated for the cost of replacement insurance, if any, and any out-of-pocket expenses they would not have incurred, absent Caterpillar's breach of the 1988 GIP.

## IV.     Reinstatement of Caterpillar's Insurance Plan

Almost five years have passed since the court granted plaintiffs judgment as to Caterpillar's liability for violating their right to life-time, premium-free health insurance pursuant to the 1988 GIP. Aside from the obvious injustice of plaintiffs' having endured nine years without the premium-free health insurance that they were promised and to which they are legally entitled, the plaintiffs also argue that this remedy is necessary to enable to the parties to calculate damages according to the damages schedule and claims procedure to which the parties have already agreed, as these particular plaintiffs will continue to accrue damages until their premium-free Caterpillar insurance is restored. The court will grant plaintiffs' request for an order directing Caterpillar to re-enroll these eight plaintiffs to health insurance without premiums, if not already re-enrolled, including the disabled adult child of Wilma Farrenholz.

**CONCLUSION**

For the foregoing reasons, the court will grant the motion of plaintiffs Beverly Carson, Wilma Farrenholz, Hattie Grace, Sharon Houser, Laura Mansfield, Florence Miller, Charlotte Seibert, and Nancy Virden for summary judgment. The court will enter judgment for each of these plaintiffs and will order Caterpillar to re-enroll each of them in its insurance plan without premiums and in keeping with the terms of the 1988 GIP and the 1992 unilateral implementation.

An appropriate order will issue.

_____
ALETA TRAUGER
UNITED STATES DISTRICT JUDGE